*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

         *Plaintiff-Appellant,*

    *v.*

GREGORY STEVEN HORN,

         *Defendant-Appellee.*

No. 11-5470

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:01-cr-142-1—Thomas A. Wiseman, Jr., District Judge.

Argued: March 14, 2012

Decided and Filed: May 8, 2012

Before: CLAY, ROGERS, and COOK, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** John-Alex Romano, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Michael C. Holley, OFFICE OF FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee. **ON BRIEF:** John-Alex Romano, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Harold B. McDonough, Jr., ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. Michael C. Holley, C. Douglas Thoresen, OFFICE OF FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge. Once again in this matter, the district court has declined to follow a non-retroactivity determination of the United States Sentencing Commission. In 2001, Defendant Gregory Horn was sentenced as a career offender under U.S.S.G. § 4B1.1 following his guilty plea to bank robbery. Six years later, in

1

2007, the Sentencing Commission promulgated Amendment 709, which changed the method by which a district court calculated prior offenses. After public comment, the Commission declined to give Amendment 709 retroactive application. Had Amendment 709 been in effect when Horn was originally sentenced, he would not have been deemed a career offender. In 2008, Horn moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), requesting that the district court retroactively apply Amendment 709. The district court granted the reduction, reasoning that the Commission's retroactivity decision was not binding under *United States v. Booker*, 543 U.S. 220 (2005), and under the plain language of the Sentencing Reform Act ("SRA"), see 28 U.S.C. §§ 991–998. Before this court addressed Horn's appeal, the Supreme Court rejected the *Booker* argument in *Dillon v. United States*, 130 S. Ct. 2683 (2010). Subsequently, this court rejected the district court's interpretation of the SRA, determined that the district court lacked the authority to resentence Horn, and remanded for further proceedings. *United States v. Horn*, 612 F.3d 524, 528 (6th Cir. 2010) ("*Horn II*"). On remand, the district court again applied Amendment 709 retroactively. The district court found that the Commission's retroactivity decision was arbitrary and capricious, that the SRA did not authorize the issuance of binding policy statements, and that the issuance of binding policy statements violated the doctrine of separation of powers. This was an error because the SRA authorizes the Commission to issue binding retroactivity decisions, these retroactivity decisions do not present separation-of-powers problems, and the Commission's retroactivity decision was neither arbitrary nor capricious.

## I.

The facts are undisputed. In 2001, Horn pled guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(d). At sentencing, the district court determined that Horn was a career offender under U.S.S.G. §4B1.1 (2001), resulting in a then-mandatory Guidelines range of 188 to 235 months' imprisonment. The district court sentenced Horn to 204 months' imprisonment, which this court affirmed on direct appeal. *See United States v. Horn*, 355 F.3d 610, 611–12 (6th Cir. 2004) ("*Horn I*").

Effective November 1, 2007, the Sentencing Commission promulgated Amendment 709, which altered the method of determining whether a defendant qualified as a career offender. *See* U.S.S.G. App. C., Amend. 709. Under the amendment, multiple sentences are counted as a single sentence if they were not separated by an intervening arrest, and the sentences were imposed on the same day. *See id.*; U.S.S.G. § 4A1.2(a)(2)(2010). It is undisputed that if Amendment 709 were applied in Horn's case, he would not qualify as a career offender and his Guidelines range would be 92 to 115 months' imprisonment. The Sentencing Commission did not, however, designate Amendment 709 for retroactive application.

In 2008, Horn moved for a sentence reduction under 18 U.S.C § 3582(c)(2) based on Amendment 709. Section 3582(c)(2) allows a district court to reduce a term of imprisonment already imposed if certain conditions are met:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, *if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(2) (emphasis added). The district court granted the motion, reasoning that (1) Guidelines policy statements cannot bind district courts, and (2) *Booker* rendered the entirety of the Guidelines advisory. The district court further determined that Amendment 709 should have been designated for retroactive application. The district court resentenced Horn to 108 months' imprisonment.

We reversed and remanded because the district court lacked the authority to resentence Horn. *Horn II*, 612 F.3d at 527–28. We reasoned that "18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10 provide that the Commission's retroactivity determinations control whether district courts may resentence defendants, and the Commission has not designated Amendment 709 for retroactive application." *Id.* at 527. We noted that under 28 U.S.C. § 994(o) & (u), the Commission has the responsibility

to review and revise the Guidelines, and specify which amendments apply retroactively. *Id.* These provisions grant "'the Commission the unusual explicit *power* to decide whether and to what extent its amendments reducing sentences will be given retroactive effect.'" *Id.* (quoting *Braxton v. United States*, 500 U.S. 344, 348 (1991)). We noted that the Commission had exercised this power through U.S.S.G. § 1B1.10(a)(2)(A), which lists the amendments that apply retroactively. Finally, we rejected Horn's argument that neither 18 U.S.C. § 3582(c)(2) nor 28 U.S.C. §994(u) authorized the Commission to issue binding policy statements. Horn relied on a dissent by Justice Stevens in *Dillon v. United States*, 120 S. Ct. at 2701 (Stevens, J., dissenting), in which Justice Stevens stated that policy statements were intended to advise, not bind. However, this court held that "even Justice Stevens acknowledged that this argument does not apply to the Commission's retroactivity decisions at issue in this case because '§ 994(u) authorizes the Commission to determine the retroactive effect of sentence reductions.'" *Horn II,* 612 F.3d at 528 (quoting *Dillon*, 130 S. Ct. at 2703 n.8 (Stevens, J., dissenting)). This court reversed and remanded for resentencing consistent with its opinion.

On remand, the district court again applied Amendment 709 retroactively. The district court gave three reasons for its decision. First, the district court reasoned that the Commission's retroactivity decision was arbitrary and capricious. The district court inferred that the Commission had two reasons for not making Amendment 709 retroactive: the change was too complex; and requiring district courts to retroactively apply the Amendment and the crack-cocaine amendments simultaneously would have been too great a burden. The district court found this justification to be "manifestly unjust." Second, as a matter of statutory construction and to avoid separation-of-powers concerns, the district court reasoned that the Commission could only issue binding guidance about retroactivity through an actual guideline rather than a policy statement. The district court analogized terms in the SRA to the terms used in application of the Administrative Procedure Act, 5 U.S.C. §500, *et seq.* The court drew parallels between "guidelines" and "legislative rules"; "commentary" and "interpretive rules"; and "policy statements" and "general statements of policy." Given these purported parallels, the district court reasoned that policy statements issued by the Commission could only be

non-binding, and that a binding rule must take the form of a guideline. Third, the district court concluded that the Commission's issuance of a binding policy statement regarding §3582(c)(2) proceedings created separation-of-powers concerns. The district court held that the Commission, an independent agency, was effectively exercising legislative power with no meaningful procedural check or limitation. The district court found it significant that policy statements lacked three procedural checks on the Commission's power relied upon by the Supreme Court in *Mistretta v. United States*, 488 U.S. 361 (1989): a congressional veto, a notice-and-comment procedure, and intelligible principles to guide Commission decision-making. The district court concluded that "an administrative agency cannot be granted the power to issue legislative rules (unrelated to any adjudication) without having any political accountability and without having to follow any procedure whatsoever." The district court concluded that the policy statement did not constrain its discretion under § 3582(c)(2), and subsequently resentenced Horn to 108 months' imprisonment. The government appeals.

## II.

The parties dispute whether the Sentencing Commission has the statutory power to issue binding policy statements, whether such policy statements violate the doctrine of separation of powers, and whether the Commission's retroactivity decision with regard to Amendment 709 was proper. For the following reasons, the Sentencing Commission's decision was statutorily and constitutionally valid, and was not arbitrary and capricious.

### 1.     Sentencing Reform Act

The SRA gave the Sentencing Commission the power to issue binding policy statements with regard to the retroactive application of Guidelines amendments. The starting point is 28 U.S.C. § 994(u), which states that "[i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."

Section 994(u) does not specify which form the Commission's retroactivity determination should take—whether in the form of a guideline or policy statement—but it establishes the Commission's duty to specify whether any amendments are retroactive. Other provisions of the SRA make clear that the Commission is to voice these determinations through policy statements. Section 994(a)(2)(C) requires the Commission to promulgate "general policy statements regarding application of the guidelines . . . including the appropriate use of the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." This section can only be read as a directive for the Commission to issue policy statements regarding the retroactivity of Guidelines amendments, though it does not by its terms make these policy statements binding. The binding effect of the policy statements is mandated in turn by 18 U.S.C. § 3582(c)(2), which empowers a district court to retroactively reduce a defendant's sentence based on a subsequent reduction in the Guidelines only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The use of the word "if" indicates that the district court's power is conditioned upon the the Commission's policy statement. As the *Dillon* Court stated, "A court's power under § 3582(c)(2) thus depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive." *Dillon*, 130 S. Ct. at 2691. In sum: § 994(u) requires the Commission to specify whether an amendment is retroactive, § 994(a)(2)(C) requires that this specification be in the form of a policy statement, and § 3582(c)(2) makes those policy statements binding.

The structure of § 994(a) supports this conclusion. In that section, Congress considered the difference between "guidelines" and "policy statements," and directed the Commission to use each in different situations. Congress opted to have the Commission promulgate "general policy statements" with regard to the retroactive application of guidelines. *See* 28 U.S.C. § 994(a)(2)(C). In contrast, in the same section of the statute, Congress directed the Commission to promulgate guidelines only in three scenarios: (1) "for use of a sentencing court in determining the sentence to be imposed in a criminal case"; (2) "regarding the appropriate use of the provisions for revocation of probation"; or (3) "for modification of the term or conditions of supervised release

and revocation of supervised release." 28 U.S.C. § 994(a)(1) & (3). Congress expressly contemplated what action it wanted the Commission to take, and directed the Commission to promulgate a policy statement to control the retroactivity of an amendment instead of a guideline.

This conclusion is consistent with, and may be compelled by, this court's interpretation of the SRA in *Horn II*. We have already held that district courts are bound, as a matter of statutory interpretation, by the pronouncements of the Commission with regard to retroactivity. *See Horn II*, 612 F.3d at 527–28. Further, this court specifically rejected Horn's argument that the SRA does not authorize the Commission to issue binding policy statements under 18 U.S.C. § 3582(c) and 28 U.S.C. § 994(u). *See Horn II*, 612 F.3d at 527–28. This comports with a recent case from the Fifth Circuit, where the court agreed that the text of § 3582(c)(2) evinces a congressional intent that Commission policy statements regarding retroactivity be binding:

> A common-sense reading of the above-quoted phrase "if such a reduction is consistent with applicable policy statements" indicates that, regardless of whether Congress wanted policy statements to be binding in the sentencing context, it wished them to be binding in § 3582(c) proceedings. If a sentence reduction is inconsistent with a policy statement, it would violate § 3582(c)'s directive, so policy statements must be binding.

*United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011). Recently, the Third Circuit reached the same conclusion. *See United States v. Smith*, No. 11-1400, 2012 WL 208081 (3rd Cir. Jan. 25, 2012).

In urging the opposite conclusion, Horn misinterprets the conditional language of § 3582(c)(2). Horn contends that the phrase "consistent with" in § 3582(c) means that policy statements are not binding. In support of this argument, Horn relies on a First Circuit case that discusses the meaning of "consistent with" in a now-repealed statute governing Department of Labor grants for the training of migrant farmworkers. *Maine v. U.S. Dep't of Labor*, 770 F.2d 236, 239 (1st Cir. 1985) (quoting 29 U.S.C. § 1672(c)(1)(repealed)). The statute in *Maine* required that the procedures for awarding grants be "'consistent with' the government's 'standard procurement policies.'" *Id.* The

court held that "consistent with" did not mandate literal compliance with the government's standard procurement procedures, but rather allowed more flexibility. *Id.* at 239. From this, Horn concludes that the phrase "consistent with" does not mandate strict compliance with a binding rule in all contexts. This is true, but irrelevant. Regardless of the meaning of the term "consistent with" in the context of migrant farm workers, this court has already determined that "consistent with" requires literal compliance with the Commission's policy statements in the context of a § 3582(c)(2) proceeding. We rejected a similar argument in *Horn II*, where we held that "[a] court's power under § 3582(c)(2) thus depends in the first instance on the Commission's decision not just to amend the Guidelines[,] but to make the amendment retroactive." 612 F.3d at 527 (quoting *Dillon*, 130 S. Ct. at 2691–92).

Further, Horn's suggested comparison of 28 U.S.C. § 994(u) to (t) does not compel a different conclusion.[1] Horn correctly notes that § 994(u), on its own, does not require the Commission to make its determinations of retroactivity through policy statements. He contrasts this with § 994(t), which requires the Sentencing Commission to "promulgate general policy statements regarding the sentencing modification provision in [18 U.S.C. § 3582(c)(1)(A)]." Horn argues that because policy statements are mentioned in § 994(t) but not in § 994(u), the Commission need not enforce its retroactivity decision via policy statements. Horn's argument then runs up against the statutory language set forth above. He acknowledges that § 994(a)(2)(C) requires the issuance of policy statements pertaining to § 3582(c)(2) proceedings, which appears to destroy his contrast between § 994(u) and § 994(t). He then argues that nothing in § 994(a)(2)(C) requires the policy statement to be binding, but he again disregards the fact that the district court is bound by any retroactivity policy statement under 18 U.S.C.

---

[1]28 U.S.C. § 994(t) states, in relevant part:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

§ 3582(c)(2). This language demonstrates that differences between § 944(t) and §944(u) are immaterial.

Similarly, Horn's assertion that § 994(o) authorizes the issuance of guidelines with regard to retroactivity is wrong. Section 994(o) directs the Commission to "periodically . . . review and revise . . . the guidelines promulgated pursuant to the provisions of this section." 28 U.S.C. § 994(o). However, § 994(o) does not broaden the definition of the term "guideline" or displace the division between guidelines and policy statements set forth in § 994(a).

Moving away from the plain language of the SRA, Horn analogizes the SRA to the APA. However, this analogy is flawed in light of the express statutory language discussed above.[2] Horn relies on the fundamental premise that when the SRA was passed, Congress was legislating "on the heels of four decades of experience and litigation under the Administrative Procedure Act." From this historical context, Horn argues that Congress intended to import the APA concepts of "legislative rules," "interpretative rules," and "policy statements" into the SRA. Regardless of whether this is true, an inferred intent, premised on historical context, does not stand in the face of explicit statutory language. Horn's argument proves too much. Because Horn concedes that Congress was legislating with full knowledge of the APA, the fact that Congress specifically directed the Commission to issue a binding policy statement was no accident. Unless unconstitutional, Congress is free to change the rules by which an agency plays.

Horn then parses language from Justice Stevens's dissent in *Dillon,* 130 S. Ct. at 2694–2705, to support his statutory argument. In doing so, Horn ignores a critical footnote in which Justice Stevens recognized that the SRA "authorizes the Commission to determine the retroactive effect of sentence reductions." *Id.* at 2703 n.8 (Stevens, J., dissenting). Justice Stevens distinguished the power to determine retroactivity from the power at issue in *Dillon*, noting that "Congress has instructed the Commission to

---

[2]Horn made this "guidelines" versus "policy statement" statutory argument in *Horn II*, an argument we implicitly rejected.

perform a gate keeping function by determining which individuals are eligible for relief pursuant to § 3582(c)(2)." *Id.*

The district court's interpretation of the SRA is untenable. The district court reasoned that the SRA requires the Commission to issue either non-binding policy statements or guidelines regarding retroactivity. However, in the context of retroactivity, a non-binding policy statement could never issue. As this court held in *Horn II*, § 3582(c)(2)'s conditional clause requires compliance with the Commission's policy statements regarding retroactivity. Even if the Commission were to attempt to promulgate a non-binding policy statement, district courts would still be bound to follow that policy statement under the express language of § 3582(c)(2).

The district court also contended that the Commission should enact guidelines, as opposed to policy statements, to enforce its retroactivity determination. Were this court to adopt such a requirement, however, it would unnecessarily impinge upon the powers of the Commission. The Supreme Court has acknowledged that the Commission has "the unusual explicit *power* to decide whether and to what extent its amendments reducing sentences will be given retroactive effect." *Braxton*, 500 U.S. at 348. Because of this power, district courts must follow the "policy statements issued by the Sentencing Commission" regarding the retroactivity of Guidelines amendments. 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) says nothing about a district court's obligation to follow the Commission's *guidelines* regarding retroactivity—it only mentions *policy statements*. Accordingly, were this court to require the Commission to issue guidelines instead of policy statements, it is conceivable that a district court would not be bound by such guidelines. This would rob the Commission of the very power recognized by the Supreme Court.

## 2.     Separation of Powers

The policy statements embodied in U.S.S.G. § 1B1.10 are constitutional under separation-of-powers principles. Horn characterizes the policy statements as an unauthorized power grab by the Sentencing Commission, absent any congressional delegation of authority. This is incorrect. Congress has delegated the power to the

Commission to issue binding policy statements. *See Garcia*, 655 F.3d at 435; *Smith*, 2012 WL 208081, at *2. This delegation was constitutionally permissible because Congress set forth intelligible principles to guide the retroactivity determination. Further, the Commission's authority to make retroactivity decisions does not otherwise upset the balance of powers between the coordinate branches.

First, Congress's delegation of authority was proper because it set forth intelligible principles to guide the Commission's actions. Under the nondelegation doctrine, Congress generally cannot "delegate its legislative power to another Branch" of the government. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). However, a delegation is permissible if Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Id.* (citations omitted). In 28 U.S.C. § 994(u), Congress directed that "[i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." By statute, the Commission may only make Guidelines amendments retroactive if such retroactive effect "would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 28 U.S.C. § 994(a)(2). Further, Congress prescribed the specific tool—policy statements—for the Commission to use in regulating the retroactive effect of sentencing. Therefore, "both §§ 994(u) and 994(a)(2) limit and inform the Commission on how it must exercise its delegated authority." *Smith*, 2012 WL 208081, at *2. Horn concedes that Congress has set forth intelligible principles for the purposes of the nondelegation doctrine. Appellee Br. 54–55.

Even viewing the issue outside the nondelegation context, the binding policy statements do not otherwise upset the balance of powers. The starting point of a separation-of-powers analysis with regard to the Sentencing Guidelines is the Supreme Court's opinion in *Mistretta*, 488 U.S. at 412. In that case, a group of prisoners challenged the constitutionality of the SRA under the separation-of-powers doctrine.

The Supreme Court concluded that the SRA did not upset the constitutionally mandated balance of powers by granting the Commission rulemaking power or by locating it with the judicial branch. *Id.* at 384–97. In making this determination, the Court held that the Commission's powers were not united with the powers of the Judiciary; therefore, the Commission did not aggrandize the power of the Judiciary. *Id.* at 393–94. The Court reasoned that the Commission is an agency independent of the Judiciary in every relevant sense: Congress "can revoke or amend any or all of the Guidelines as it sees fit either within the 180-day waiting period or at any time"; the Commission's members were subject to the President's limited power of removal; and the rulemaking was subject to notice and comment. *Id.* Further, the Court noted that placement of the Sentencing Commission within the judicial branch did not increase the branch's authority because sentencing decisions have been historically left to the Judiciary—the Guidelines merely constituted an aggregation of those decisions. *Id.* at 395. Finally, the Court held that placing the Commission within the judicial branch did not prevent the branch from "accomplishing its constitutionally assigned functions." *Id.* at 396 (internal quotations omitted). The Court concluded that "Congress neither delegated excessive legislative power nor upset the constitutionally mandated balance of powers among the coordinate Branches." *Id.* at 412.

There is no merit to the argument that binding policy statements nonetheless violate the separation-of-powers doctrine because they are not subject to intelligible principles, congressional veto, or notice-and-comment. As discussed above, Congress set forth intelligible principles for the Commission to follow. Further, policy statements are subject to congressional review. Although policy statements are not subject to the 180-day waiting period applicable when the Commission passes a Guidelines Amendment, *see* 28 U.S.C. § 994(p), Congress can direct the Commission to change its retroactivity determination or pass a law overruling the Commission's determination "at any time." *See Mistretta*, 488 U.S. at 394. When considering a Guidelines amendment, Congress knows the Commission's intent regarding retroactivity because where "the Commission considers an amendment for retroactive application . . . , it shall decide whether to make the amendment retroactive at the same meeting at

which it decides to promulgate the amendment." U.S. Sentencing Comm'n, Rules of Practice and Proc. 4.1 (available at http://www.ussc.gov/Meetings_and_Rulemaking/Practice_Procedure_Rules.pdf). Assuming the Commission follows its own mandatory rule, Congress knows the Commission's retroactivity determination during the 180-day review. There is no evidence the Commission failed to follow its procedures with regard to Amendment 709. Congress was accordingly free to dictate an alternative retroactivity determination during the 180 days it considered Amendment 709. Even if the Commission failed to follow its rule, Congress could have preempted the Commission's retroactivity decision by statute. Given these procedures, the Commission was fully accountable to Congress.

Next, the absence of a statutorily mandated notice-and-comment procedure for policy statements does not raise serious separation-of-powers concerns. As a matter of fact, in this case the Commission *did* solicit "public comment as to whether it should designate the Amendment [709] for purely prospective application or for retroactive application as well." *United States v. Horn*, 590 F. Supp. 2d 976, 984 (M.D. Tenn. 2008). The Commission's rules require it to solicit public comment on the retroactivity of amendments. Rule 4.4 of the Sentencing Commission's Rules of Practice and Procedure states: "At the same time the Commission votes to publish proposed amendments for comment, it shall request public comment on whether to make any amendments retroactive." Following this rule, the Commission requested public comment on whether Amendment 709 should be made retroactive, 72 Fed. Reg. 41794, 41794–95 (July 31, 2007), held a public hearing on the issue, 72 Fed. Reg. 58345 (October 15, 2007), and voted on retroactivity at a public hearing on December 11, 2007.[3] Accordingly, the purported lack of notice-and-comment does not serve to distinguish *Mistretta*: the Commission solicited public views and made its decision at a public hearing. Although the Commission did not publish any public comments regarding Amendment 709's retroactivity—and thus did not formally comport with the

---

[3]The minutes for the Commission's December 11 meeting are available at: http://www.ussc.gov/legislative_and_public_affairs/public_hearings_and_Meetings/20071211/200712 11_Minutes.pdf.

APA's notice-and-comment procedure—this is of no moment. The public nature of the proceedings provided an effective check and allayed the concerns voiced by the Court in *Mistretta*. Morever, even if the Commission had abandoned its public comment rule, the absence of public comment would not create a separation-of-powers issue. It is true that the *Mistretta* Court relied, in part, on the presence of notice-and-comment to justify upholding the SRA, a procedure the Commission is not statutorily mandated to follow when issuing policy statements. *See Mistretta*, 488 U.S. at 394. However, the *Mistretta* Court listed notice-and-comment as one of many ways in which the power of the Commission was not united with that of the Judiciary. *See id.* at 393–94. As the *Mistretta* Court noted, the power of the Commission is separate from the Judiciary's power in other ways: Congress can revoke or amend any policy statement of the Commission at any time and the Commission's members are subject to the President's limited powers of removal. *See id.* These additional procedures ensure that the power of the Judiciary is not united with the power of the Commission in a manner meaningful to a separation-of-powers analysis.

In the alternative, Horn argues that the Sentencing Commission aggrandizes the power of the Legislative Branch. Horn contends that the Commission exercises legislative powers; therefore, it must meet the requirements to pass a statute through Congress. There are at least three flaws with this argument. First, the SRA explicitly places the Sentencing Commission within the Judicial Branch, establishing the Commission "as an independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a). Indeed, the Supreme Court has recognized that the Commission resides in the judicial branch. *Mistretta*, 488 U.S. at 384–85. Second, Horn cites no authority for the proposition that a rule passed by an agency violates the bicameral passage and presentment requirements of Congress. Third, the Court recognized in *Mistretta* that sentencing "never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government." *Id.* at 364. The Court explained the history of sentencing leading up to the SRA:

> Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject

> to congressional control. Congress early abandoned fixed-sentence rigidity, however, and put in place a system of ranges within which the sentencer could choose the precise punishment. Congress delegated almost unfettered discretion to the sentencing judge to determine what the sentence should be within the customarily wide range so selected. This broad discretion was further enhanced by the power later granted the judge to suspend the sentence and by the resulting growth of an elaborate probation system. Also, with the advent of parole, Congress moved toward a "three-way sharing" of sentencing responsibility by granting corrections personnel in the Executive Branch the discretion to release a prisoner before the expiration of the sentence imposed by the judge. Thus, under the indeterminate-sentence system, Congress defined the maximum, the judge imposed a sentence within the statutory range (which he usually could replace with probation), and the Executive Branch's parole official eventually determined the actual duration of imprisonment.

*Id.* at 364–65 (internal citations omitted). Given the historic distribution of power, it cannot be said that the Commission is exercising legislative power. If anything, the SRA gives the Commission what was historically judicial power. As the *Mistretta* Court recognized, judges historically determined the appropriate sentence for defendants based on a variety of factors. *Id.* at 395. The Commission essentially aggregated those determinations to promote uniformity. *Id.* This is a judicial function, not legislative, and therefore not subject to the requirements for a passage of a statute.

Horn's reliance on the Supreme Court's opinion in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 130 S. Ct. 3138 (2010), is misplaced. In *Free Enterprise*, the Court considered a separation-of-powers challenge to the provisions in the Sarbanes–Oxley Act that established the Public Company Accounting Oversight Board ("Board"). *Id.* at 3151–61. The defendant contended that the Board lacked political accountability due to a unique dual for-cause removal limitation. *Id.* at 3148–49. The Sarbanes-Oxley Act places the Board under the oversight of the Securities and Exchange Commission. *Id.* at 3148. The SEC Commissioners could only remove Board members "for cause." *Id.* The SEC Commissioners, in turn, could only be removed by the President "for cause." The Court noted that, under certain circumstances, Congress can create independent agencies run by officers whom the President can only remove "for cause." *Id.* at 3152 (citing *Humphrey's Executor v.*

*United States*, 295 U.S. 602 (1935)).  In those instances, the President is still vested with the ability to review an officer's conduct under the "good cause" standard.  In the case of the Board, however, the President loses the ability to review the officer's conduct.  *Free Enterprise*, 130 S. Ct. at 3153.  Instead, the President could only review the "good cause" determination of the SEC Commissioner's, a decision in which he can only intervene if it is so unreasonable as to constitute "inefficiency, neglect of duty, or malfeasance in office."  *Id.* at 3154.  The Court found this diffusion of power to violate the separation of powers, because the President was no longer the judge of the Board's conduct.  *Id.*  The Court held "that the dual for-cause limitations on the removal of Board members contravene the Constitution's separation of powers."  *Id.* at 3151.

Horn's case does not involve a dual for-cause limitation on the President's power to remove members of the Sentencing Commission.  The President may remove members of the Sentencing Commission: "[t]he Chair, Vice Chairs, and members of the Commission shall be subject to removal from the Commission by the President only for neglect of duty or malfeasance in office or for other good cause shown."  28 U.S.C. § 991(a).  The Court has consistently approved this type of "for cause" removal limitation since its decision in *Humphrey's Executor*.  Accordingly, the concerns raised in *Free Enterprise* are inapplicable to the instant case.

Finally, Horn has no constitutional right to have his sentence reduced under 18 U.S.C. § 3582(c)(2).  Horn contends that a separation-of-powers violation can occur even if the Commission did not encroach on the powers of another branch.  Horn argues that "'[t]he dynamic between and among the branches is not the only object of the Constitution's concern.  The structural principles secured by separation of powers protect the individual as well.'"  Appellee Br. 56 (quoting *Bond v. United States*, 131 S. Ct. 2355, 2365 (2011)). The Supreme Court, however, has stated that the "concern of encroachment and aggrandizement . . . has animated our separation-of-powers jurisprudence."  *Mistretta*, 488 U.S. at 382.  Although individuals have standing to raise separation-of-powers claims—the issue in *Bond v. United States*—that is not the

animating inquiry of a separation-of-powers analysis. As the Supreme Court has previously noted:

> the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather, § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.

*Dillon*, 130 S. Ct. at 2692. Viewed in this way, § 3582(c)(2) proceedings do not implicate an individual's right to assert a constitutional claim.

### 3.        Arbitrary and Capricious

Finally, the Commission's retroactivity decision with regard to Amendment 709 was not arbitrary and capricious. While it is questionable that we even have authority to review the Commission's retroactivity decisions under this standard, we assume without deciding that we do. *See United States v. Martin*, 438 F.3d 621, 635–36 (6th Cir. 2006). An agency's rule is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here, after soliciting public comment on the issue of retroactivity, the Commission held a public meeting on December 11, 2007. At the meeting, two Commission members explained why Amendment 709 should not be applied retroactively. The minutes of that meeting state:

> The Chair called for a motion as suggested by Mr. Cohen [to make Amendment 709 retroactive]. Hearing none, the Chair stated that Amendment 709 will not become retroactive for lack of a motion to that effect. The Chair opened the floor for comments on the issue. Commissioner Howell stated three reasons not to make Amendment 709 retroactive. First, the criminal history amendment was intended to clarify

> the criminal history rules and not to address a fundamental fairness concern as with certain other amendments given retroactive effect. Second, it is difficult to determine how many defendants may be affected by making the amendment retroactive. Third, retroactive application of the amendment would require additional fact-finding in particular cases and result in an extraordinary burden on the courts.
>
> Vice Chair Steer agreed with Commissioner Howell's statements. Vice Chair Steer noted further that §4A1.3 (Departures Based on Inadequacy of Criminal History Category) contains a policy statement on downward departures that applies in a case in which the defendant's criminal history may overstate the seriousness of the offense, which addresses concerns which might otherwise argue for retroactivity for Amendment 709.

U.S. Sentencing Comm'n Public Meeting Minutes at 3 (December 11, 2007). In making this decision, the Commission considered the factors Congress intended it to consider, namely whether retroactivity would "further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." *See* 28 U.S.C. § 994(a)(2). The Commission determined that retroactivity was unnecessary to "reflect the seriousness of the offense . . . and to provide just punishment for the offense," *see* 18 U.S.C. § 3553(a), because Amendment 709 was a clarification that was not intended to address fundamental fairness. This conclusion was buttressed by Vice Chair Steer's acknowledgment that concerns about retroactivity were properly addressed by the policy statement contained in U.S.S.G. § 4A1.3.[4] Accordingly, the Commission considered the factors Congress intended it to consider. The Commission considered the purpose of the amendment, the impact on prisoners in light of other guidelines, the impact on the courts, and the uncertainty of how many inmates would be impacted by the amendment. Further, Horn cannot point to any important aspect of the problem that the Commission failed to consider. Finally, this decision did not run counter to evidence presented to the Commission or seem implausible. For these reasons, the Commission's decision was not arbitrary or capricious.

---

[4]U.S.S.G. § 4A1.3 states in pertinent part: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

As it did in its first opinion, the district court improperly focused on a statement at a summit regarding crack-cocaine retroactivity in declaring Amendment 709 arbitrary and capricious. *See Horn*, 590 F. Supp. 2d at 985 (district court relying on same statement in granting first sentence reduction). At the summit, Vice Chair Castillo stated, "In terms of the criminal history [amendment made through Amendment 709], we purposely, because of the complexity of the reductions made in criminal history, coupled with what was going on with crack, we purposely did not make that retroactive." This statement in part confirms, and in part contradicts, the official record of the public meeting. When reviewing the agency determination, it is preferable to rely on the official meeting minutes and statements issued by the agency rather than a stray comment uttered at a conference regarding crack-cocaine. Because neither party can point this court to the context of the statement, and neither party made a transcript available to this court, we rely on the official minutes of the Commission.

## III.

For the foregoing reasons, we reverse and remand the order of the district court, with the instruction that the district court not apply Amendment 709 retroactively.