**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0472n.06

Case No. 12-5472

**FILED**
*Jul 01, 2014*
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| SOLATHUS JOHNSON, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, GRIFFIN, and STRANCH, Circuit Judges.

**SILER**, Circuit Judge. Defendant Solathus Johnson appeals the denial of his motion for a reduction of his 87-month sentence pursuant to 18 U.S.C. § 3582(c)(2). He was sentenced in 2009 for distribution of crack cocaine. In 2012, he filed a motion for a sentence reduction under § 3582(c)(2), arguing that the district court should retroactively apply amended sentencing guidelines for crack cocaine offenses to his previously imposed sentence. The district court denied his motion, reasoning that Johnson's status as a career offender barred him from a sentence reduction under § 3582(c)(2). For the reasons that follow, we **AFFIRM**.

I.

The facts are undisputed. In June 2008, pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(B), Johnson pleaded guilty to distributing 115.7 grams of crack

cocaine in violation of 21 U.S.C. § 841(a)(1). His plea agreement specifically stated that he was a career offender under the Sentencing Guidelines and that a ten-year mandatory minimum term of imprisonment applied to his conviction. The agreement also stated that, with a total offense level of 34, reduced from 37 due to acceptance of responsibility, and a criminal history category of VI, Johnson's anticipated sentencing guidelines range was 262 to 327 months.

The presentence investigation report ("PSR") calculated Johnson's sentencing guideline range as follows: first, based on the drug quantity attributable to him of at least 115.7 grams of cocaine base, Johnson's base offense level was 30 under USSG § 2D1.1 for violating 21 U.S.C. § 841(a)(1). Second, this base offense level was adjusted upward to 37 under USSG § 4B1.1(b)(A) for his status as a career offender and adjusted downward by three levels under USSG § 3E1.1(b) for his acceptance of responsibility. Johnson fell within criminal history category III, but this increased to category VI based on his career offender status. The PSR recommended a total offense level of 34, a criminal history category of VI, and a sentencing range of 262 to 327 months—which we refer to as the "career offender range." The PSR also noted that Johnson was subject to a ten-year mandatory minimum term of imprisonment under 21 U.S.C. § 841(b)(1)(A).

The district court granted the government's motion for a downward departure based on substantial assistance under USSG § 5K1.1 and 18 U.S.C. § 3553(e), which allowed the court to sentence Johnson below the ten-year statutory mandatory minimum and below the bottom of the career offender range. In its final colloquy explaining and imposing Johnson's sentence, the district court began by stating, "[Y]ou start with an advisory guideline range based on total offense level of 34 and Criminal History Category VI, with advisory guideline range of 262 to

327 months." The district court recognized that this guideline range is the result of Johnson's "career offender designation."

Then, the district court acknowledged the following factors that influenced its decision to impose a sentence significantly lower than the recommended guideline range: 1) "the career offender designation [that] overstates [] Johnson's actual criminal history and propensity for future crimes"; 2) the "crack versus powder cocaine issue"; 3) "the issue of unwarranted sentencing disparities among co-defendants"; 4) his "substantial assistance to the government"; 5) the harsh, "extraordinary conditions of [Johnson's] confinement "; and 6) Johnson's position as "not at the top of the drug organization." Johnson had requested a downward departure from 262 months to 24 months, which the district court considered "uncalled for" and "just way too much for someone who is a designated career offender." It also stated that "a typical downward departure for substantial assistance . . . would not be appropriate."

Thus finding that Johnson's sentence should rest somewhere between a typical substantial assistance reduction and Johnson's 24-month suggestion, the district court calculated the guideline range to be 87 to 108 months, the range that would have been imposed in accordance with the attributable drug quantity had Johnson not been designated as a career offender—which we refer to as the "drug quantity range." It found this range "appropriate," determined that the sentence should be "at the bottom of that range because of the harsh conditions of confinement," and sentenced Johnson to 87 months' imprisonment.

Congress subsequently enacted the Fair Sentencing Act ("FSA") in 2010, which "increased the drug amounts triggering mandatory minimums for crack trafficking offenses . . . [and] had the effect of lowering the 100-to-1 crack-to-powder ratio to 18-to-1." *Dorsey v. United States*, 132 S. Ct. 2321, 2329 (2012). The Sentencing Commission amended the

Guidelines Manual in response. Pub. L. No. 111-220, 124 Stat. 2372 (2010). Amendment 750 implemented the FSA by changing the drug quantity table found in USSG § 2D1.1(c) to reduce the base offense level for most crack cocaine offenses. USSG App. C, Amend. 750. Amendment 759 made those changes retroactive. USSG App. C, Amend. 759. Both amendments became effective on November 1, 2011. USSG App. C, Amends. 750, 759.

In 2012, Johnson filed a motion with the district court for a sentence reduction under § 3582(c)(2), based on the retroactively-amended crack cocaine guidelines. He argued that the district court sentenced him based on the drug quantity range, and the base offense level for 115.7 grams of crack cocaine was now 28, as opposed to 30. Assuming all other aspects of his sentencing would have been the same, he contends the district court would have sentenced him to 70 months' incarceration, the bottom of the new sentencing range of 70 to 87 months based on an offense level of 25 and a criminal history category of III. The district court determined that Johnson was ineligible for a sentence reduction under § 3582(c)(2) and denied his motion. It reasoned that *United States v. Pembrook*, 609 F.3d 381 (6th Cir. 2010), and the text of 18 U.S.C. § 3582(c)(2) and USSG § 1B1.10 barred a sentence reduction for Johnson, because his applicable guideline range was the career offender range, not the drug quantity range, and the FSA and new guidelines did not alter the career offender range.

## II.

On appeal, Johnson argues that the district court improperly refused to grant him a sentence reduction under § 3582(c)(2). "We ordinarily review a district court's denial of a § 3582 motion for abuse of discretion." *United States v. McClain*, 691 F.3d 774, 776 (6th Cir. 2012). However, "'[w]here, as here, the district court does not simply decline to use its authority under § 3582' but concludes 'that a defendant is ineligible for a sentence reduction,' the district

court's conclusion is a question of law that is reviewed de novo." *Id.* at 776-77 (quoting *United States v. Johnson*, 569 F.3d 619, 623 (6th Cir. 2009)).

III.

A.

Ordinarily, a district court may not modify a term of imprisonment unless so authorized by statute. *United States v. Howard*, 644 F.3d 455, 457 (6th Cir. 2011). Relevant to this case, Congress provided authorization to modify a sentence under specific circumstances in § 3582(c)(2), which reads,

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

"The applicable policy statement, U.S.S.G. § 1B1.10, provides that '[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement [if] . . . [a]n amendment [to the Guidelines] does not have the effect of lowering the defendant's *applicable guideline range.*'" *Pembrook*, 609 F.3d at 383 (quoting USSG § 1B1.10(a)(2)(B)). In other words, a "defendant is not eligible for a reduction of sentence under § 3582(c)(2) unless (1) his sentence was 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' § 3582(c)(2), and (2) the amendment on which he relies 'ha[s] the effect of lowering the defendant's applicable guideline range,' USSG § 1B1.10(a)(2)(B)." *United States v. Hameed*, 614 F.3d 259, 260 (6th Cir. 2010). We assume without so holding that the district court sentenced Johnson "based on" a sentencing range that the Sentencing Commission subsequently lowered in Amendments 750 and 759, but Johnson fails to establish the second element of the § 3582(c)(2) test.

The definition of "applicable guideline range" has not received consistent treatment throughout the circuits, but within this circuit, the definition is clear. We held "that the term 'applicable guideline range' in U.S.S.G. § 1B1.10 refers to a defendant's pre-departure guideline range." *Pembrook*, 609 F.3d at 384. In *Pembrook*, the district court granted the defendant a downward departure from the career offender range to a sentence more analogous with the range defined for his crack cocaine offenses, because, *inter alia*, the defendant's criminal history category significantly overrepresented the seriousness of his past conduct. *Id.* at 382-83. Later, the district court denied the defendant's motion for a sentence modification under § 3582(c)(2), finding that his applicable guideline range—the career offender range—had not been subsequently lowered. *Id.* at 383. On appeal, the defendant argued that his applicable guideline range was the drug quantity range, but we affirmed the district court's conclusion. *Id.* at 384, 387. Rejecting the post-departure definition of "applicable guideline range" adopted in the Second and Fourth Circuits, we agreed with the Eighth and Tenth Circuits that "a defendant's applicable guideline range is the range produced under the guidelines' sentencing table after a correct determination of the defendant's total offense level and criminal history category but prior to any discretionary departures." *Id.* (internal quotation marks and citation omitted). We reasoned that the language of § 1B1.10 mandated such a result. *Id.* at 384-85.

In order to address the "conflicting interpretations" by the circuits "about when, if at all, the court applies a departure provision before determining the 'applicable guideline range' for purposes of § 1B1.10," the Sentencing Commission weighed in on the debate as well. USSG App. C, at *421 (2011). In the Application Notes to USSG § 1B1.10, which Amendment 759 amended in order to provide a definition for "applicable guideline range," the Sentencing Commission provided,

> Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (c) that lowers the applicable guideline range (*i.e. the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance*).

USSG § 1B1.10 cmt. n.1(A) (emphasis added). The Sentencing Commission expressly adopted the pre-departure approach of our circuit. *See* USSG App. C, Amend. 759, at *421 ("[T]he amendment adopts the approach of the Sixth, Eighth, and Tenth Circuits and amends Application Note 1 to clarify that the applicable guideline range referred to in § 1B1.10 is the guideline range determined . . . before consideration of any departure provision in the *Guidelines Manual* or any variance.").

In the years that followed, we reiterated our position on the definition of applicable guideline range. *See United States v. Joiner*, 727 F.3d 601, 604 (6th Cir. 2013). In *Joiner*, we determined that the applicable guideline range for the defendant was 240 months, which represents the statutory mandatory minimum applied to the defendant as a result of his status as a prior felony drug offender. *Id.* at 602-05. This was his pre-departure guideline range, despite the district court's citation to another guideline range when actually performing the sentencing calculation and the more obvious relation between the imposed sentence of 107 months to the 120-to-150 month guideline range that would have applied absent the statutory mandatory minimum. *Id.* at 602-03.

When calculating Johnson's sentence, the district court here began its analysis acknowledging that Johnson was a career offender and that his sentencing guideline range was the career offender range. Using this range as its point of departure, it discussed the reasons why it would impose a significantly reduced sentence, and posited some rationale for arriving at 87 months, the low end of the drug quantity range and a term that the district court determined

more appropriately accounted for Johnson's particular criminal history and the nature of the present offense. Beginning with the premise that Johnson, as a career offender, was subject to the career offender range, under *Pembrook* and the language of § 1B1.10, it is clear that Johnson's applicable guideline range—that is, the pre-departure guideline range—was the career offender range.

"A defendant whose sentence is based upon the career offender sentencing guideline cannot benefit from Amendment 750 because that amendment did not lower the career offender sentencing guidelines range." *United States v. Tillman*, 511 F. App'x 519, 521 (6th Cir. 2013); *see* USSG § 4B1.1(b); *see also United States v. Riley*, 726 F.3d 756, 759 (6th Cir. 2013). Because changes to the Sentencing Guidelines did not affect Johnson's career offender range, he is not entitled to a sentence reduction under § 3582(c)(2), *see Pembrook*, 609 F.3d at 384, and the district court correctly denied him relief pursuant to that statute. *See United States v. Drewery*, 531 F. App'x 675, 679-82 (6th Cir. 2013); *United States v. Scott*, 523 F. App'x 370, 370-72 (6th Cir. 2013); *Tillman*, 511 F. App'x at 521.

B.

Johnson challenges this decision by citing to *United States v. Jackson*, 678 F.3d 442 (6th Cir. 2012). In that case, which was on direct appeal, the defendant sought remand for resentencing in light of the changes to the Sentencing Guidelines enacted during the pendency of his appeal. *Id.* at 444. While the PSR recommended a sentencing range of 188 to 235 months due to the defendant's status as a career offender, "[t]he district court did not apply the 'career offender' guideline sentence and sentenced Jackson to 150 months." *Id.* at 443. In that opinion, "[w]e recognize[d] that the defendant's criminal history required the district court to consider the career offender guidelines," but in reaching our decision, "we focus[ed] on the range that was

actually applied to the defendant in this case," which was the drug quantity range. *Id.* at 444.

Ultimately, we held,

> If a sentencing judge, having found a defendant to be a career offender, then decides to sentence defendant below the range for career offenders and notes his policy disagreement with the crack cocaine guidelines, ordinary review would say that the sentence was as much "based on" the crack cocaine guidelines as the career offender guidelines.

*Id.* at 445. Under this holding, we were compelled to reverse and remand for resentencing so the district court could evaluate whether the revised guidelines should be considered in determining the defendant's sentence. *Id.*

Two facts in *Jackson* render it distinguishable from the present case. First, in *Jackson*, we found that the sentencing court did not apply the career offender range, which is in direct contravention to our finding here. *See United States v. Thompson*, 714 F.3d 946, 949 (6th Cir. 2013). If, as in *Jackson*, we reviewed the sentencing hearing transcript and determined that the sentencing court only relied upon the drug quantity range as its point of departure, the outcome here might be different. Second, and perhaps more telling, *Jackson* involved a unique procedural posture: we reviewed the defendant's sentence on direct appeal, "in the immediate wake of the [passage of the FSA] after a district judge explicitly delayed sentencing in hopes of the Act's imminent passage." *See Riley*, 726 F.3d at 761. Accordingly, *Jackson* was not a § 3582(c)(2) case and did not address *Pembrook* or the applicable guideline range as defined in § 1B1.10. *See Scott*, 523 F. App'x at 371-72. Because of these distinctions, the precedential authority of *Jackson* is limited for this case.

Johnson also claims that *Pembrook* is no longer binding, because we implicitly rejected its holdings in *Jackson*. However, our 2013 decision in *Joiner* considering the applicable guideline range as the pre-departure range and citing to *Pembrook* suggests otherwise. *Joiner*, 727 F.3d at 604-05. Moreover, we do not have the authority to overrule our own precedent and

we may modify only if an intervening decision of the United States Supreme Court requires us to do so. *United States v. Young*, 580 F.3d 373, 379 (6th Cir. 2009). Therefore, any implicit rejection of *Pembrook* present in *Jackson* is simply ineffectual without an intervening Supreme Court mandate. Johnson argues that *Freeman v. United States*, 131 S. Ct. 2685 (2011), mandated the rejection of *Pembrook* when it interpreted the term "based on" to mean any sentencing guideline range that "was a relevant part of the analytic framework the judge used to determine the sentence." *Id.* at 2693 (Kennedy, J.). Using this definition, Johnson seems to argue that the district court's references to the drug quantity range may qualify it as an applicable guideline range.

*Freeman* is a plurality opinion, and the Supreme Court has instructed that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks and citation omitted). We have determined that "Justice Sotomayor's opinion is the narrowest ground for the Court's decision and thus represents the Court's holding in *Freeman*." *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011). Therefore, Justice Kennedy's definition of "based on" is not binding. *See Drewery*, 531 F. App'x at 680. Further, Justice Sotomayor's holding itself is narrow, and pertains to whether a defendant who enters a Rule 11(c)(1)(C) agreement for a specific sentence can later file a motion under § 3582(c)(2) for a sentence modification. *Thompson*, 714 F.3d at 949. Accordingly, *Freeman* does not invalidate *Pembrook*.

Johnson also argues that USSG § 1B1.10 commentary containing the "applicable guideline range" definition is not binding on us by virtue of *Jackson* and *Freeman*. We held in

*United States v. Horn*, 679 F.3d 397, 402 (6th Cir. 2012), that the Sentencing Commission's policy statements on whether other guideline amendments are retroactive are binding. This conclusion is a logical deduction from the express language of § 3582(c)(2), which requires that sentence reductions be "consistent with applicable policy statements." *Id.*; *Hameed*, 614 F.3d at 267 ("The Commission's policy statements *are* mandatory . . . in the sentence-modification context, not by dint of the guidelines themselves but based on the plain text of a federal statute, § 3582(c)(2)."). Contrary to Johnson's argument, *Horn* remains good law. *Jackson* did not concern the definition of applicable guideline range in USSG § 1B1.10. Moreover, *Freeman* does not require an alternate result. Even the dissent characterizes USSG § 1B1.10(b)(1) as "the Sentencing Commission's policy statement governing whether a defendant is eligible for a reduction under § 3582(c)(2)," and declares that "§ 3582(c)(2) requires a district court 'to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification.'" *Freeman*, 131 S. Ct. at 2702 (Roberts, J., dissenting) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). That USSG § 1B1.10(b)(1) governs sentence reduction under § 3582(c)(2) and requires the district court's compliance, contentions not contradicted in the plurality or concurring opinions, support the conclusion that *Horn* is still good law.

In sum, Johnson is not entitled to a sentence modification under 18 U.S.C. § 3582(c)(2), because the career offender range is the applicable guideline range, as USSG § 1B1.10 defines the term. *Jackson* and *Freeman* do not demand a different conclusion. The district court did not err in denying Johnson the relief he sought. AFFIRMED.

JANE B. STRANCH, concurring in the judgment. I reluctantly concur in the result reached by the majority opinion. I do so only because I am bound to apply our recent cases denying sentencing reductions under 18 U.S.C. § 3582(c)(2) to those defendants who initially qualified as career offenders under USSG § 4B1.1 and who were sentenced before the Fair Sentencing Act (FSA) became effective on August 3, 2010. I remain unconvinced, however, that Johnson's sentence was "based on" the career offender guideline as the majority holds. Johnson's sentence was "based on" the same advisory guideline range determined under the drug guideline, USSG § 2D1.1, that would have applied if Johnson had not qualified as a career offender.

At the original sentencing, the district court attributed a drug quantity of 115.7 grams of crack cocaine to Johnson. This drug amount was high enough to subject Johnson to a presumptive statutory minimum term of imprisonment of ten years and a statutory maximum sentence of life imprisonment under 21 U.S.C. § 841(a) & (b)(1)(A). Under the 2007 version of USSG § 2D1.1(c)(5) in effect at the time of sentencing, Johnson had a base offense level of 30. With a three-level reduction for acceptance of responsibility, his total offense level was 27. He had four criminal history points, which placed him in criminal history category III. Total offense level 27 combined with criminal history category III produced an advisory guideline range of 87 to 108 months of imprisonment.

Johnson had at least two prior felony drug convictions, however, qualifying him for sentencing as a career offender. His offense level jumped to 37 because he faced a statutory maximum sentence of life imprisonment, and his criminal history category rose to VI. USSG § 4B1.1(b)(1). With a three-level reduction for acceptance of responsibility, Johnson faced an advisory guideline range of 262 to 327 months of imprisonment. The bottom of the career

offender range was 154 months higher than the top of the drug guideline range—adding nearly 13 years to the sentence.

The government did not ask the court to sentence Johnson under the career offender guideline range of 262 to 372 months or to the statutory minimum sentence of 120 months. Instead, the government sought to reward Johnson for the substantial assistance he provided in investigating and prosecuting other defendants. To facilitate that reward, the government filed motions for downward departure under both 18 U.S.C. § 3553(e) and USSG § 5K1.1, and the district court granted those motions.

Section 3553(e) provides that a district court "shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense," but *only* "[u]pon motion of the [g]overnment." Section 5K1.1 similarly provides that the district court "may depart from the guidelines" based on the defendant's substantial assistance, but *only* "[u]pon motion of the government." Only the government holds the power to render a cooperating defendant eligible for a substantial assistance departure from the statutory minimum sentence or the guideline range. *See United States v. Hawkins*, 274 F.3d 420, 426 (6th Cir. 2001). Once the government makes a downward departure motion, the district court has authority to decide whether a departure is appropriate and the extent of any such departure. *United States v. Rosenbaum*, 585 F.3d 259, 264 (6th Cir. 2009).

The government's conscious choice to make a motion under § 3553(e) and/or § 5K1.1 constitutes a knowing and voluntary waiver of the right to enforce the applicable statutory minimum sentence or guideline range. The Sentencing Commission recognized the government's ability to waive its rights when it drafted the commentary to § 2D1.1:

> Where a mandatory (statutory) minimum sentence applies, this mandatory minimum sentence ***may be "waived"*** and a lower sentence imposed (including a downward departure), as provided in 28 U.S.C. § 994(n), by reason of a defendant's "substantial assistance in the investigation or prosecution of another person who has committed an offense." *See* § 5K1.1 (Substantial Assistance to Authorities).

USSG § 2D1.1, comment. (n.7) (2007). *See also* USSG § 2D1.1, comment. (n. 23) (2013).

Note the Sentencing Commission's language: a statutory minimum sentence may be ***waived***, and Congress provided by statute that only the government has the power to initiate the waiver by making a motion under § 3553(e). Similarly, the government ***waives*** the right to request a sentence within the guideline range when it makes a motion to depart downward for substantial assistance under § 5K1.1. The government's waiver allows the district court to impose a sentence lower than the statutory minimum or lower than the bottom of the guideline range. *See United States v. Doe*, 731 F.3d 518, 528 (6th Cir. 2013) (Cole, J., concurring in part and concurring in the judgment) (noting that a substantial assistance motion "effectively 'waive[s]' the mandatory minimum" and "[w]ithout a mandatory minimum at work, nothing prevents Amendment 750 from having 'the effect of lowering' the sentence the [defendant] did receive"). *See also United States v. Taylor*, 749 F.3d 541, 552 (6th Cir. 2014) (Donald, J., dissenting) (observing that the "sole function" of a § 3553(e) motion "is to render the normal statutory minimum inoperative").

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993). "Waiver, unlike mere forfeiture, extinguishes [the] ability to raise the claim at all." *United States v. Moore*, 93 F. App'x 887, 892 n.6 (6th Cir. 2004).

Where, as here, the government affirmatively chooses to move for a downward departure for substantial assistance under § 3553(e) or § 5K1.1 or both, the government *waives*—that is, it intentionally relinquishes or abandons—its right to enforce the statutory minimum sentence or the career offender guideline range. The government's waiver extinguishes its ability to make two arguments in a future sentencing reduction proceeding under § 3582(c).

First, the government's waiver precludes it from asserting that the defendant's sentence was actually "based on" the very same statutory minimum sentence or career offender guideline range that the government knowingly and voluntarily waived at the original sentencing. Second, the government's waiver extinguishes its ability to argue that a defendant is not eligible for a sentencing reduction because "the guideline range applicable to that defendant has [not] subsequently been lowered as a result of an amendment to the Guidelines Manual." USSG § 1B1.10(a)(1).

We routinely enforce knowing and voluntary waivers of rights made by criminal defendants. *See e.g.*, *United States v. Hockenberry*, 730 F.3d 645, 672 (6th Cir. 2013); *United States v. Wendlandt*, 714 F.3d 388, 398 (6th Cir. 2013). We should likewise enforce knowing and voluntary waivers made by the government.

At Johnson's original sentencing, the government waived the statutory minimum sentence and the application of the career offender guideline. The district court calculated the applicable guideline range using total offense level 27, and criminal history category III, which produced an advisory guideline range of 87 to 108 months. This was the same advisory guideline range Johnson faced under § 2D1.1 initially before the career offender guideline was applied. The court imposed a sentence of 87 months of imprisonment.

Johnson's original sentence was, in fact, "based on" the drug guideline, § 2D1.1, and not on the career offender guideline. *See Freeman v. United States*, 131 S. Ct. 2685, 2695 (Sotomayor, J., concurring in the judgment) ("To ask whether a particular term of imprisonment is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment.") Section 2D1.1 served "as the basis or foundation" for Johnson's sentence. Because the sentence was "based on" a drug guideline that was subsequently lowered by the Sentencing Commission in Amendments 750 and 759, I would hold that Johnson is eligible for a sentencing reduction under § 3582(c)(2) and USSG § 1B1.10.

If re-sentenced today under Amendments 750 and 759, Johnson's base offense level would be 28 because the drug quantity was 115.7 grams of crack cocaine. USSG § 2D1.1(c)(6). With a three-level reduction for acceptance of responsibility, the total offense level would be 25 and combined with criminal history category III, the advisory guideline range would be 70 to 87 months of imprisonment. The district court could impose a reduced sentence if it chose to do so.

Accordingly, if I were writing on a clean slate, I would find Johnson eligible for a sentencing reduction and remand the case to the district court for resentencing. Where the government expressly *waives* application of a statutory minimum and/or a particular guideline range, we should enforce that waiver in a subsequent sentencing reduction proceeding under § 3582(c)(2). We should not allow the government to resurrect a position that it knowingly and voluntarily disclaimed at the original sentencing. Further, our case law should not perpetuate the myth that a defendant's sentence was "based on" the career offender guideline when it certainly was not. The majority opinion and cases cited within it unfairly absolve the government of its

express waiver and wrongly penalize the defendant by denying eligibility for a sentencing reduction that unquestionably exists.

I may be bound by our case precedent, but I am not required to agree with it. I concur only in the judgment.