PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-4540 and 12-1103
_____

UNITED STATES OF AMERICA

v.

JOEL BERBERENA,
Appellant
_____

UNITED STATES OF AMERICA

v.

DENROY GAYLE,
Appellant
_____

Appeals from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Nos. 2-01-cr-00363-019 and
2-05-cr-00357-001)
District Judges: Honorable Berle M. Schiller and
Honorable Lawrence F. Stengel
_____

1

Argued July 11, 2012

Before: RENDELL, SMITH and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: September 11, 2012)
_____

Sarah S. Gannett, Esq.     **[ARGUED]**
Brett G. Sweitzer, Esq.
Christy Unger, Esq.
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA  19106
   *Counsel for Appellants*

Robert A. Zauzmer, Esq.
Bernadette A. McKeon, Esq.     **[ARGUED]**
Zane David Memeger, Esq.
Jose R. Arteaga, Esq.
Thomas M. Zaleski, Esq.
Office of United States Attorney
Suite 1250
615 Chestnut Street
Philadelphia, PA  19106
   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Defendants Joel Berberena and Denroy Gayle appeal from orders entered in response to their 18 U.S.C. § 3582(c)(2) motions for sentence reductions to reflect amendments to the United States Sentencing Guidelines that narrow the disparity between sentences for crack cocaine and powder cocaine offenses.[1] They urge that their respective District Courts were not bound by Guidelines § 1B1.10, a newly revised policy statement that limits the extent to which a sentence may be reduced below the prisoner's amended Guidelines range. Defendants contend that, by preventing district courts from straying from the amended Guidelines range to account for departures and variances awarded as part of a prisoner's sentence, the Commission (1) exceeded its statutory authority, (2) violated separation-of-powers principles, and (3) failed to comply with the Administrative Procedure Act's ("APA") notice-and-comment requirements. For the following reasons, we will affirm the District Courts' refusal to reduce Defendants' sentences below their amended Guidelines ranges.

## I.

In 2003, Berberena pled guilty to conspiracy to distribute crack cocaine and powder cocaine, in violation of 21 U.S.C. § 846; possession of crack cocaine with intent to

---

[1] Defendants' criminal cases were unrelated below. Defendants filed an unopposed motion to consolidate their appeals, as they raised the same issues. The Clerk of this Court granted the motion, consolidating the two appeals for all purposes.

distribute, in violation of 21 U.S.C. § 841(a)(1); and possession of powder cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). After his sentence was vacated in light of *United States v. Booker*, 543 U.S. 220 (2005), the District Court resentenced him, calculating an advisory Guidelines range of 210-262 months but varying downward to impose a sentence of 150 months in prison.[2] In 2009, Berberena moved for a sentence reduction in light of Amendment 706 to the Guidelines, which reduced the base offense levels for most crack-related offenses. His amended Guidelines range was 168-210 months. The District Court granted Berberena a variance from the amended range proportional to the variance it awarded him previously and reduced his sentence to 135 months.

In 2006, a jury convicted Gayle of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). In 2007, the District Court calculated a Guidelines range of 168-210 months for the § 922(g) and § 841(a) convictions, but varied downward to 120 months based upon the nature and circumstances of the offense and Gayle's personal history and characteristics. Because Gayle's § 924(c) conviction carried a mandatory consecutive 60-month sentence, the District Court sentenced him to a total of 180 months in prison.

In 2010, Congress passed the Fair Sentencing Act ("FSA") to "restore fairness to Federal cocaine sentencing"

---

[2] The record does not indicate the District Court's reason for granting Berberena a downward variance.

by changing the threshold quantities of crack cocaine that trigger mandatory minimum sentences. Pub. L. 111-220, § 2, 124 Stat. 2372, 2372 (2010). Pursuant to its authority to amend the Guidelines consistent with the FSA, *id.* § 8, the Commission promulgated Amendment 750. This amendment reduced the crack-related offense levels in § 2D1.1 of the Guidelines. The Commission made Amendment 750 retroactive by adding it to the list of amendments on the basis of which prisoners can move for reduced sentences. *See* U.S.S.G., App. C., amd. 759. That list appears in subsection (c) of the Commission's policy statement at § 1B1.10 of the Guidelines, which governs sentence reductions as a result of amendments to the Guidelines.

After the new crack-related offense levels became effective, both Berberena and Gayle moved for sentence reductions under 18 U.S.C. § 3582(c)(2).[3] As a result of

---

[3] Section 3582(c)(2) establishes an exception to the general rule that a court may not modify a term of imprisonment once it has been imposed. It provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o) . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are

5

Amendment 750, Berberena's range changed from 168-210 months to 135-168 months. Having already been sentenced to 135 months' imprisonment, Berberena sought a further reduction from the low end of the new range proportional to the variance he received previously. The range for Gayle's § 922(g) and § 841(a) convictions changed from 168-210 months to 110-137 months, to which the mandatory consecutive 60-month sentence for his § 924(c) conviction would be added. Gayle similarly urged the court to reduce his 120-month sentence for the first two offenses below the minimum of the amended range to account for the downward variance it granted him originally.

The government opposed Defendants' motions. It cited the Commission's most recent revision to the policy statement at § 1B1.10, which prohibits courts from reducing a "defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A). The earlier version of the policy statement had permitted prisoners who, like Defendants, originally received below-Guidelines sentences to obtain reductions below their amended ranges in proportion to their earlier departures or variances. *Id.* § 1B1.10(b)(2)(B) (2010) (amended 2011). However, it provided that, while comparable reductions to account for departures "may be appropriate," comparable reductions to

applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

6

account for variances "generally would not be appropriate."[4] Concluding that the "distinction [between departures and variances] has been difficult to apply and has prompted litigation," the Commission further closed the variance door, so to speak, in adopting Amendment 750. *See* Notice of Final Action Regarding Amendment to Policy Statement 1B1.10, 76 Fed. Reg. 41332, 41334 (July 13, 2011). The result was the policy statement that the District Courts applied here. It prohibits a reduction below the low end of a prisoner's new

---

[4] In full, the earlier version of the limitation at issue read:

> If the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range . . . may be appropriate. However, if the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), a further reduction generally would not be appropriate.

U.S.S.G. § 1B1.10(b)(2)(B) (2010) (amended 2011).

range, even if the prisoner originally received a below-Guidelines sentence. The only exception is for defendants whose below-Guidelines sentences were based on a "government motion to reflect the defendant's substantial assistance to authorities." Only then is a reduction below the bottom of a prisoner's amended range allowed. U.S.S.G. § 1B1.10(b)(2)(B).[5]

---

[5] The current version of § 1B1.10(b)(2) reads:

> (A) Limitation.—Except as provided in subdivision (B), the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.
>
> (B) Exception for Substantial Assistance.—If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended

Before the District Courts, the government cited § 3582(c)(2)'s requirement that sentence reductions be "consistent with applicable policy statements issued by the Sentencing Commission" to argue that § 1B1.10(b)(2)(A)'s limitation was binding. Defendants, however, urged that the revised version of § 1B1.10 exceeded the Commission's statutory authority, violated separation-of-powers principles, and failed to comply with the APA's notice-and-comment requirements. Neither convinced the District Judges before whom they filed their § 3582(c)(2) motions to ignore the policy statement and reduce their sentences below the amended Guidelines ranges. Instead, the District Judges abided by the revised limitation. Berberena's motion was denied because his original sentence of 135 months was at the bottom of the new range. Gayle's motion was granted in part only, resulting in a 170-month sentence at the bottom of the new range—110 months for the § 922(g) and § 841(a) convictions, and 60 consecutive months for the § 924(c) conviction.[6]

---

guideline range determined under subdivision (1) of this subsection may be appropriate.

U.S.S.G. § 1B1.10(b)(2)(A)-(B).

[6] Proportional reductions to account for the variances originally received by each would have resulted in a sentence of approximately 109 months for Berberena and 139 months for Gayle.

Both Defendants timely appealed.[7]

## II.

On appeal, Defendants advance the same arguments they urged below.[8] They contend that the Commission's revised limitation on proportional reductions suffers from three infirmities, each of which, they say, suffices to deprive it of binding effect. First, they argue that the Commission exceeded its authority under the Sentencing Reform Act ("SRA") by effectively undoing variances and departures awarded to a prisoner when he was originally sentenced. Second, they argue that, in revising § 1B1.10, the

---

[7] We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Generally, a district court's denial of a sentence reduction is reviewed only for abuse of discretion. *United States v. Mateo*, 560 F.3d 152, 154 (3d Cir. 2009). But when, as here, a defendant raises purely legal issues of statutory and constitutional interpretation, we exercise plenary review. *United States v. Doe*, 564 F.3d 305, 307 n.2 (3d Cir. 2009).

[8] These are issues of first impression in this circuit. Two of our sister courts of appeals, however, have considered them in some detail. In *United States v. Horn*, the Sixth Circuit Court of Appeals rejected Defendants' arguments as they related to the Commission's binding retroactivity determinations. *See* 679 F.3d 397 (6th Cir. 2012). And more recently, in *United States v. Anderson*, the Eighth Circuit Court of Appeals rejected Defendants' arguments with respect to the Commission's limitation on below-Guidelines reductions—the same limitation at issue here. *See* 686 F.3d 585 (8th Cir. 2012).

Commission exercised legislative and judicial authority in violation of separation-of-powers principles. Last, they argue that the Commission's notice-and-comment procedure was inadequate to render the limitation an otherwise valid, binding rule. We consider each argument in turn.

## A. Commission Authority

Congress granted the Commission the power to issue binding policy statements regarding the extent to which sentences may be reduced based upon retroactive Guidelines amendments. The Commission exercised that authority when it limited courts' discretion to reduce a prisoner's sentence below his amended Guidelines range.

The starting point for our analysis of the Commission's authority is the SRA. Most pertinent here is 28 U.S.C. § 994(u), pursuant to which the Commission amended § 1B1.10. *See* Notice of Final Action Regarding Amendment to Policy Statement 1B1.10, 76 Fed. Reg. at 41332 ("The Sentencing Commission hereby gives notice of an amendment to a policy statement and commentary made pursuant to its authority under 28 U.S.C. 994(a) and (u)."). That provision states:

> If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, *it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of*

11

*imprisonment for the offense may*
*be reduced*.

28 U.S.C. § 994(u) (emphasis added). The SRA, then, authorizes the Commission to decide not only whether—"in what circumstances"—an amendment is to apply retroactively but also the extent to which—"by what amount"—sentences may be reduced based on those that it makes retroactive. *See Dillon v. United States*, 130 S. Ct. 2683, 2691 (2010) ("The SRA charges the Commission . . . with determining whether and to what extent an amendment will be retroactive." (citing 28 U.S.C. § 994(u))). Congress therefore delegated to the Commission the power it exercised when revising § 1B1.10. In prohibiting reductions below a prisoner's amended Guidelines range, the Commission plainly indicated "by what amount" sentences may be reduced on the basis of retroactive amendments. *See United States v. Anderson*, 686 F.3d 585, 589 (8th Cir. 2012) ("By limiting reductions below the amended guideline range to an amount comparable to an earlier reduction for substantial assistance, the Commission has specified the 'circumstances and by what amount' a sentence may be reduced." (quoting 28 U.S.C. § 994(u))).

Another provision in the SRA authorizes—indeed, requires—the Commission to exercise its authority over sentence reductions by issuing policy statements. In Section 994(a), "Congress considered the difference between 'guidelines' and 'policy statements,' and directed the Commission to use each in different situations." *United States v. Horn*, 679 F.3d 397, 402 (6th Cir. 2012). Congress sought for the Commission to issue policy statements to address, among other topics, "the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). The Sixth

12

Circuit Court of Appeals has concluded that "[t]his section can only be read as a directive for the Commission to issue policy statements regarding the retroactivity of Guidelines amendments." *Horn*, 679 F.3d at 401. The same is true with respect to the Commission's related authority—also based in § 994(u)—to determine the extent to which prisoners' sentences may be reduced based upon those amendments it makes retroactive.[9]

Defendants attempt to cabin the Commission's authority by claiming that Congress did not intend for the Commission to disrupt elements of a prisoner's original sentence that are unrelated to the amendment pursuant to

---

[9] In urging the opposite conclusion, Defendants unconvincingly compare § 994(u) and § 994(t). Section 994(t) specifically directs the Commission to issue policy statements addressing a sentence modification procedure similar to § 3582(c)(2). 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction . . . ."). According to Defendants, the absence of a similar reference to policy statements in § 994(u) demonstrates that it "does not contemplate issuance of binding policy statements to implement § 3582(c)." Appellants' Br. at 37. Confusingly, though, they simultaneously acknowledge that § 994(a)(2)(C) "requires the Commission to issue policy statements that will pertain to § 3582(c)(2) proceedings." *Id.* This "appears to destroy [the] contrast between § 994(u) and § 994(t)." *Horn*, 679 F.3d at 403.

which he seeks a reduction. They argue that the Commission has improperly "undone" aspects of below-Guidelines sentences by forbidding judges from reimposing variances and departures they previously deemed appropriate. Reply Br. at 3. This argument misses the mark. We cannot intuit an intent unmoored from Congress' directives. As demonstrated above, § 994(u) authorizes the Commission to issue policy statements regarding when and how sentences may be reduced based on its amendments to the Guidelines. Nowhere did Congress require that the Commission permit judges to fashion a reduction with exactly the same tools—departures and variances—they originally used to set an appropriate sentence. *See Anderson*, 686 F.3d at 589-90 ("The statutory framework does not require the Commission to make all downward departures and variances applied to the original sentence available when creating a basis for sentencing reduction."). Rather than undo the effect of previous departures and variances, the Commission has merely limited the extent to which new ones can be awarded in § 3582(c)(2) proceedings.

Indeed, the text of § 3582(c)(2) makes clear that Congress contemplated that the Commission would have the power to impose limits on these types of sentence reductions, by making the Commission's policy statements binding. Section 3582(c)(2) provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of

14

> imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, *if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(2) (emphasis added). While Defendants contend that the "consistent with" language does not necessarily make § 1B1.10 binding, we disagree.[10] Indeed, in *United States v. Doe*, we rejected such an interpretation and do not revisit that decision here. 564 F.3d 305, 310 (3d Cir. 2009) ("Under the express statutory language of § 3582(c)(2) and § 994(u), the Commission's policy statements implementing retroactive sentence reduction are binding."). "If a sentence reduction is inconsistent with a policy statement, it would violate § 3582(c)'s directive, so policy

---

[10] Defendants claim that there are other provisions of the SRA that contain similar "consistent with" language, but with respect to which the Commission has not issued binding policy statements. They point to 18 U.S.C. § 3582(c)(1)(A), which requires that sentence reductions for extraordinary and compelling reasons be consistent with applicable policy statements of the Commission. But, Defendants fail to recognize that the policy statement that governs such reductions lists circumstances that qualify as extraordinary and compelling under § 3582(c)(1)(A), thereby restricting district courts just like § 1B1.10. *See* U.S.S.G. § 1B1.13 cmt. n.1.

15

statements must be binding." *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011).

The Supreme Court's opinion in *Dillon v. United States* reinforces our view that § 3582(c)(2) requires district courts to comply with the Commission's policy statements. There, the Court interpreted § 3582(c)(2) as "*requir[ing] the court to follow the Commission's instructions in § 1B1.10* to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 130 S. Ct. at 2691 (emphasis added). The Court's use of the term "requires" cannot reasonably be read to make the Commission's decisions regarding the extent to which sentences may be reduced anything but mandatory. In fact, it is the mandatory nature of the Commission's limitation on sentence reductions that gave rise to the very *Booker* argument considered, and rejected, by the Court in *Dillon*. *See, e.g.*, *id.* at 2690 ("Under Dillon's approach*, Booker* would preclude the Commission from issuing a policy statement that generally forecloses below-Guidelines sentences at § 3582(c)(2) proceedings, as USSG § 1B1.10 purports to do.").

Moreover, the unfettered judicial discretion that Defendants seek to preserve is at odds with the narrow scope of § 3582(c)(2) sentence reduction proceedings. In *Dillon*, the Supreme Court made abundantly clear that sentence reduction proceedings pursuant to § 3582(c)(2) are not wholesale resentencings.[11] *Id.* ("Section 3582(c)(2) does not

---

[11] In their briefs, Defendants remind us that *Dillon* predated the revision to § 1B1.10 that is at issue here. *See* 130 S. Ct. at 2691-92. We, however, fail to understand how that fact pertains to whether the Commission was authorized

authorize a sentencing or resentencing proceeding."). "Congress intended to authorize only a limited adjustment to an otherwise final sentence," *id.* at 2691, "within the narrow bounds established by the Commission," *id.* at 2694. The Court inferred Congress' intent not just from the text of § 3582(c)(2) but also from the Commission's considerable control over sentence reduction proceedings under § 994(u). *Id.* at 2691-92. It noted that, in addition to depending on the Commission's decision to make an amendment retroactive, courts are "constrained by [its] statements dictating 'by what amount' the sentence of a prisoner . . . affected by [an] amendment 'may be reduced." *Id.* at 2691. For us to say that the Commission does not have the power to impose such constraints would therefore run afoul of *Dillon*.

As the Sixth Circuit Court of Appeals aptly summarized: "§ 994(u) requires the Commission to specify [by what amount sentences may be reduced based on retroactive amendments], § 994(a)(2)(C) requires that this specification be in the form of a policy statement, and § 3582(c)(2) makes those policy statements binding." *Horn*, 679 F.3d at 401-02. Together, these provisions sink

---

to make the revision. In deciding that district courts may not correct mistakes in a prisoner's original sentence, the Court emphasized how § 3582(c)(2) only "permits a sentence reduction within the narrow bounds established by the Commission." *Id.* at 2694. Like the errors the Court deemed outside the scope of reduction proceedings in *Dillon*, the comparable reductions Defendants seek here are outside the "narrow bounds established by the Commission." *Id.* It just so happens that the Commission has, as it may, further narrowed those bounds since *Dillon*.

Defendants' contention that the Commission exceeded its statutory authority by prohibiting courts from reducing a prisoner's sentence below his amended Guidelines range except to reflect substantial assistance.

## B. Separation of Powers

Defendants' argument that the new version of § 1B1.10's limitation violates separation-of-powers principles fares no better. They submit that the Commission's issuance of a binding policy statement suffers from two problems: first, it constitutes the exercise of legislative authority without necessary accountability to Congress; and, second, it infringes upon the exercise of judicial authority by courts.

### 1. *Legislative Authority*

As we noted above, Congress authorized the Commission to issue binding policy statements that limit the extent to which prisoners may benefit from retroactive Guidelines amendments. We cannot agree that Congress' delegation of that authority to the Commission violates separation-of-powers principles.

"[R]ooted in the principle of separation of powers that underlies our tripartite system of Government," the nondelegation doctrine generally prevents Congress from "delegat[ing] its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 371-72 (1989). However, a delegation of legislative power is permissible if Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Id.* at 372 (citations omitted). "Congress need not expressly authorize

18

every determination made by the Commission." *Garcia*, 655 F.3d at 435. The Supreme Court has "upheld, . . . without deviation, Congress' ability to delegate power under broad standards." *Mistretta*, 488 U.S. at 373.

In *Mistretta*, the Supreme Court rejected a nondelegation challenge to the SRA's broad grant of authority to the Commission. *Id.* at 374. It held that Congress' delegation of authority was "sufficiently specific and detailed to meet constitutional requirements." *Id.* In support of its holding, the Court cited the considerable direction Congress gave the Commission on how to go about establishing a federal sentencing regime. The Court described at length how, in 28 U.S.C. § 994, Congress specified the purposes the Commission must serve, the tools the Commission must use, the factors the Commission must consider, and other terms by which the Commission must abide in promulgating Guidelines. *Id.* at 374-77. On the basis of those provisions, the Court held that the SRA "sets forth *more than merely an 'intelligible principle'* or minimal standards." *Id.* at 379 (emphasis added).

Given that only an intelligible principle is required, "[t]he threshold for a constitutionally valid delegation is much lower than was the delegation in *Mistretta*." *Garcia*, 655 F.3d at 435. That threshold easily has been met here. "[B]oth §§ 994(u) and 994(a)(2) limit and inform the Commission on how it must exercise its delegated authority." *United States v. Smith*, 459 Fed. App'x 99, 101 (3d Cir. 2012). In § 994(u), Congress articulated the contours of the Commission's power: to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for [an] offense may be reduced" whenever it lowers the applicable Guidelines range for that offense. 28

19

U.S.C. § 994(u). In § 994(a), Congress further guided the Commission's exercise of that authority. First, it "prescribed the specific tool—policy statements—for the Commission to use in regulating the retroactive effect of sentencing." *Horn*, 679 F.3d at 405. Second, it required that any policy statements issued on the subject "further the purposes set forth in [18 U.S.C. §] 3553(a)(2)." 28 U.S.C. § 994 (a)(2). These provisions are of the same type as those on which the *Mistretta* Court relied and therefore satisfy us, as they have other courts, that Congress has "delineate[d] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority."[12] *Mistretta*, 488 U.S. at 373. This is all that is constitutionally required.

Even outside the nondelegation context, we fail to see how the Commission's revision of § 1B1.10 upsets the constitutionally prescribed balance of power. Defendants contend that when the Commission binds courts in § 3582(c)(2) proceedings it "lacks the political accountability demanded by the separation of powers doctrine." Appellants' Br. at 40. Their argument relies upon *Mistretta*'s analysis of the Commission's location within the judicial branch. The defendants in *Mistretta* argued that the SRA unconstitutionally expanded the power of the judicial branch by "uniting within [it] the . . . quasi-legislative power of the Commission with the judicial power of the courts." *Mistretta*,

---

[12] For other decisions rejecting nondelegation challenges to the Commission's issuance of § 1B1.10, see *Anderson*, 686 F.3d at 590; *Horn*, 679 F.3d at 404; *Smith*, 459 Fed. App'x at 101; *Garcia*, 655 F.3d at 435; *United States v. Fox*, 631 F.3d 1128, 1133 (9th Cir. 2011); *United States v. Dukes*, 420 Fed. App'x 237, 237 (4th Cir. 2011).

488 U.S. at 393. The Court concluded that the Commission's powers are not united with the judiciary's power because the Commission is an independent agency accountable to Congress and the public. *Id.* Congress "can revoke or amend any or all of the Guidelines as it sees fit either within the 180-day waiting period or at any time," and the Commission's "rulemaking is subject to the notice and comment requirements of the Administrative Procedure Act." *Id.* at 393-94 (citing 28 U.S.C. §§ 994(p) and (x)).

Although the Commission's policy statements are subject to neither the 180-day waiting period nor the APA's notice-and-comment requirements, its revision of § 1B1.10 did not violate the separation-of-powers doctrine. The purpose of those measures—to make the Commission accountable—was fulfilled. "Although policy statements are not subject to the 180-day waiting period applicable when the Commission passes a Guidelines Amendment, Congress can direct the Commission to change its retroactivity determination or pass a law overruling the Commission's determination 'at any time.'"[13] *Horn*, 679 F.3d at 405-06

---

[13] We emphasize that the Commission "endeavor[s] to include amendments to policy statements and commentary in any submission of guideline amendments to Congress." U.S. Sentencing Comm'n, Rules of Practice and Proc. 4.1. Assuming, as we do, that the Commission followed its own rules when revising § 1B1.10, Congress was aware of the decision to further limit sentence reductions over the 180 days during which it considered Amendment 750. It was "accordingly free to dictate an alternative . . . determination during the 180 days." *Horn*, 679 F.3d at 406.

21

(quoting *Mistretta*, 488 U.S. at 394) (internal citation omitted); *see also United States v. Fox*, 631 F.3d 1128, 1131 (9th Cir. 2011) ("Congress, of course, can override both Guidelines and Policy Statements by statute."). The Commission, then, remains fully accountable to Congress when it issues binding policy statements like § 1B1.10. Moreover, the Commission did solicit public views about § 1B1.10(b)'s limitation on sentence reductions and made its decision to make the limitation more stringent at a public hearing. *See* 76 Fed. Reg. 24960 (May 3, 2011); U.S. Sentencing Comm'n, Public Meeting Minutes (June 30, 2011).[14] "The public nature of the proceedings provided an effective check and allayed the concerns voiced by the Court in *Mistretta*." *Horn*, 679 F.3d at 406.

No legislative power imbalance of constitutional dimensions resulted from the Commission's decision to set a limit on sentence reductions pursuant to § 3582(c)(2). Congress validly delegated to the Commission authority to make that decision, drafted the statute that made it binding on courts, and retained the power to legislate over it. The legislative authority Defendants ascribe to the Commission was not unfettered or otherwise improper.

2. *Judicial Authority*

The Commission's revision of § 1B1.10(b) did, admittedly, constrain the ability of courts entertaining § 3582(c)(2) motions to reduce sentences. On that basis,

---

[14] The minutes of the Commission's June 30, 2011 meeting are available at http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20110630/Meeting_Minutes.pdf.

Defendants contend that it interfered with the judicial function and thereby violated separation-of-powers principles. We do not agree for several reasons.

To start, we note that Congress, without question, possesses authority to restrict the judiciary's discretion in fashioning sentences. *See Mistretta*, 488 U.S. at 364 ("Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control."). And it is Congress that bound courts to the limitation in § 1B1.10, by expressly requiring that sentence reductions based on amendments to the Guidelines be consistent with the Commission's policy statements. *See supra* Section II.A. "Even if the Commission were to attempt to promulgate a non-binding policy statement, district courts would still be bound to follow that policy statement under the express language of § 3582(c)(2)." *Horn*, 679 F.3d at 404. The Commission, therefore, is not acting alone in constraining judicial discretion; it is instead crafting policy statements that the legislative branch itself makes binding.

Even were we to consider the Commission's imposition of a binding limitation on courts separate and apart from the language of § 3582(c)(2), no separation-of-powers issue arises. In the SRA, Congress explicitly placed the Commission within the judicial branch because of the role that branch has historically played in sentencing. *See* 28 U.S.C. § 991(a) (establishing the Commission "as an independent commission in the judicial branch of the United States"). The Commission's location within the same branch as the courts suggests that no imbalance between the branches of government resulted from its revision of § 1B1.10. In fact, the *Mistretta* Court approved of the Commission's location in

23

that branch precisely because its functions were "attendant" to courts' role in determining appropriate sentences. 488 U.S. at 391. That is, the Court based its rejection of a separation-of-powers challenge to the SRA in part on the Commission's exercise of the very function Defendants find so objectionable, i.e., its promulgation of "Guidelines [that] bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases." *Id.* The Commission's establishment of a limit on sentence reductions falls squarely within this function.

Defendants' arguments do not convince us otherwise. They emphasize the Court's conclusion in *Mistretta* that the Commission's "powers are not united with powers of the Judiciary in a way that has meaning for separation-of-powers analysis" in part because "it is not a court[ and] does not exercise judicial power." *Mistretta*, 488 U.S. at 393. By interfering with the sentencing decisions of courts, Defendants argue, the Commission acts as a court and thereby upsets the constitutionally prescribed balance of power. Appellants' Br. at 41. However, to start, we reiterate that *Dillon* emphasized that reductions are not sentencings, 130 S. Ct. at 2690, such that the decisions with which § 1B1.10 interferes are not of the same nature as those considered in *Mistretta*. What is more, the *Mistretta* Court concluded that the Commission did not exercise judicial power well before *Booker*—when the Commission's ability to limit courts' sentencing discretion was at its zenith. *See* 488 U.S. at 367 (describing the SRA as making "the Sentencing Commission's guidelines binding on the courts"). The Commission no more interferes with the sentencing decisions of courts by limiting the extent to which sentences may be

24

reduced than when it established mandatory sentencing ranges under the pre-*Booker* regime.

The Commission's retention of the "tiniest sliver," *Dillon*, 130 S. Ct. at 2693, of authority to restrict courts proceeding under § 3582(c)(2) therefore fully comports with separation-of-powers principles. Defendants' fears about the effect of the Commission's revision to § 1B1.10 on the structural protections of the Constitution "prove . . . to be 'more smoke than fire.'" *Mistretta*, 488 U.S. at 384.

## C. Notice-and-Comment

Defendants' last remaining argument does not detain us for long because it is based on a faulty premise. Defendants contend that the Commission's failure to comply with the APA's notice-and-comment procedure bars enforcement of § 1B1.10. However, the Commission is not required to abide by the APA's notice-and-comment provisions when issuing policy statements. Its purported failure to do so, then, does not invalidate the new limitation on sentence reductions.

The statutory scheme established by the SRA makes clear that the Commission is only subject to the APA's notice-and-comment provisions when promulgating Guidelines. After differentiating between the subjects that may be addressed via Guidelines and policy statements, 28 U.S.C. § 994(a), Congress imposed different requirements for the Commission's use of each tool. Section 994(x) provides that "[t]he provisions of section 553 of title 5, relating to publication in the Federal Register and public hearing procedure, *shall apply to the promulgation of guidelines* pursuant to this section." 28 U.S.C. § 994(x) (emphasis

added). Unlike in certain surrounding provisions, *see* 28 U.S.C. §§ 994(t) and (v), § 994(x) makes no reference to the Commission's issuance of policy statements. The omission can only be interpreted to exclude policy statements from § 994(x)'s application of the APA's notice-and-comment provisions.[15] *See Fox,* 631 F.3d at 1131 ("The Sentencing Commission must jump through more procedural hoops to issue a Guideline than to issue a Policy Statement." (citing, *inter alia,* 28 U.S.C. § 994(x))).

We cannot agree with Defendants that the mandatory nature of § 1B1.10 alters this reasoning or result. Appellants' Br. at 50. Defendants contend that administrative law principles prevent agencies from avoiding notice-and-comment by announcing binding precedent in general statements of policy. *Id.* (citing *Ctr. for Auto. Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 807 (D.C. Cir. 2006)). Such administrative law principles, however, are of limited application to this case. "Congress decided that the Sentencing Commission would not be an 'agency' under the APA when it established the Commission as an independent entity in the judicial branch." *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1450 (D.C. Cir. 1994); *see also id.* ("Congress . . . decided that the Commission

---

[15] Curiously, Defendants' separation-of-powers argument is based in large part on the fact that the Commission is not subject to the same procedural requirements when issuing policy statements as when promulgating Guidelines. In fact, Defendants actually relied heavily on the inapplicability of APA notice-and-comment to argue that the Commission escaped necessary accountability when revising § 1B1.10.

would not be subject to the provisions of the APA except as specifically enumerated."). And even were the Commission subject to the rules governing other agencies, the principle to which Defendants refer would still be of dubious applicability because, as we stated earlier, it was Congress—not the Commission—that made § 1B1.10 binding.

Given that the Commission is not obligated to abide by the APA's notice-and-comment provisions when issuing policy statements, we need not address the adequacy of the notice-and-comment procedures it used to revise § 1B1.10's limitation on sentence reductions. The Commission properly issued the policy statement, and it is therefore valid.

## III.

For the foregoing reasons, we will affirm both the order denying Berberena's motion for a sentence reduction and the order granting in part Gayle's motion for a sentence reduction.

27