12-921-cr
*United States v. Johnson*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2012

(Argued: January 15, 2013                    Decided: May 23, 2013)

Docket No. 12-921

————————

UNITED STATES,

*Appellee*,

– v. –

ERIC ERSKINE, ALSO KNOWN AS BLACK, DARRYL DEAS, ALSO KNOWN AS SOLO, ALSO KNOWN AS DARRELL DEAS, STEVEN BETHEA, ALSO KNOWN AS TEE, NEHEMIAH BROWN, ALSO KNOWN AS IKE, BORNTHIA PLUMMER,

*Defendants*,

SWAHILI JOHNSON, ALSO KNOWN AS SUAVE,

*Defendant-Appellant.*

————————

Before:    STRAUB, HALL, AND DRONEY, *Circuit Judges*.

————————

An appeal from an order of the United States District Court for the Southern District of New York (Denny Chin, *Judge*) granting a within-Guidelines sentence reduction to Defendant-Appellant Johnson under 18 U.S.C. § 3582(c)(2) pursuant to Amendment 750 of the United States Sentencing Guidelines, but declining to grant a downward variance from the applicable reduced sentencing range in accordance with Guidelines § 1B1.10.   We hold that the District Court did not err in determining that defendant Johnson was not entitled to a downward variance as a part of his sentence reduction.

Accordingly, the order of the District Court is **AFFIRMED**.

————————

ANDREW L. FISH, (Katherine Polk Failla, Michael A. Levy, Assistant United States Attorneys, on the briefs) *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

AVROM ROBIN, Law Offices of London & Robin, New York, NY, *for Defendant-Appellant*.

_____

STRAUB, *Circuit Judge*:

Defendant-Appellant Swahili Johnson appeals from an order of the United States District Court for the Southern District of New York (Denny Chin, *Judge*)[1] granting his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2), pursuant to Amendment 750 of the United States Sentencing Guidelines ("Guidelines"). Johnson challenges the District Court's order reducing his sentence based on the court's determination that it was unable to vary below the revised applicable Guidelines range based on Guidelines § 1B1.10.

For the reasons that follow, we hold that the District Court did not err in declining to apply a downward variance to sentence Johnson below the reduced Guidelines range. Under § 1B1.10 of the Guidelines, the District Court did not have discretion to apply the variance to which Johnson asserts he was entitled. In spite of Johnson's arguments to the contrary, § 1B1.10 bound the District Court, was a valid exercise of the Sentencing Commission's ("Commission") authority, and did not violate the Administrative Procedure Act's ("APA") requirements for the promulgation of formal rules.

Accordingly, we **AFFIRM** the order of the District Court.

**BACKGROUND**

On November 23, 2005, defendant Swahili Johnson was arrested and charged with

---

[1] Circuit Judge Chin issued the Order on appeal while sitting by designation on the District Court.

conspiracy to distribute crack cocaine. He pled guilty to distributing fifty grams or more of crack cocaine on June 8, 2006. The District Court formally accepted Johnson's guilty plea on June 8, 2006, and sentenced him on November 29, 2006. At sentencing, the court determined that Johnson's total Guidelines offense level was 35, that his prior offenses placed him in criminal history category VI, and accordingly that his Guidelines range was 292 to 365 months. The District Court then granted a ten-percent downward variance from the bottom of the Guidelines range based on Johnson's personal history, imposing a custodial sentence of 262 months' imprisonment.

On October 23, 2009, the District Court reduced Johnson's sentence pursuant to the retroactive application of Amendment 706 to the Guidelines. We have detailed the history and validity of Amendment 706 in *United States v. Savoy*, 567 F.3d 71 (2d Cir. 2009) (per curiam). In essence, Amendment 706 addressed the disparities in prior sentencings of defendants convicted of certain crimes involving crack cocaine, as compared to defendants convicted of similar crimes involving powder cocaine. The Amendment, "effective November 1, 2007, . . . reduced by two levels the base offense level associated with each enumerated quantity of crack cocaine." *Savoy*, 567 F.3d at 73; *see also* U.S.S.G. App. C, amd. 706 (2008).

Thus, as a result of this first reduction, Johnson's offense level fell from 35 to 33, resulting in an applicable Guidelines range of 235 to 293 months. Applying the same ten percent downward variance it had at Johnson's original sentencing, the District Court determined that Johnson's sentence should be reduced to 212 months.

Johnson appealed this sentence reduction, arguing, *inter alia*, that the District Court failed to recognize its discretion to vary even further downward from the applicable sentencing

3

range. *See United States v. Erskine*, 406 F. App'x 544, 545 (2d Cir. 2011). We affirmed the District Court's calculation of this first reduction. *Id.* at 546-48.

In November 2011, Johnson moved *pro se* for a further sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), based on the retroactive application of Amendment 750 to the Guidelines. The District Court then appointed counsel to represent Johnson in connection with this motion.

On February 9, 2012, Johnson's counsel filed a new motion to reduce Johnson's sentence under 18 U.S.C. § 3582(c)(2) pursuant to Amendment 750, which was effective as of November 1, 2011. *See* U.S.S.G. App. C, amd. 750 (2011). Amendment 750, much like Amendment 706 before it, was designed to address the disparity between the Guidelines' treatment of crack cocaine and powder cocaine. To accomplish this goal, Amendment 750 further reduced the base offense levels for crack cocaine offenses under § 2D1.1 of the Guidelines.[2]

Amendment 750 was made retroactive when it was added to the list of Guidelines amendments under which a defendant could move for a reduced sentence. *See* U.S.S.G., App. C., amd. 759 (2011). The list of amendments allowing for such retroactive reductions appears in subsection (c) of the policy statement at § 1B1.10 of the Guidelines, which generally governs sentence reductions resulting from Guidelines amendments. *See United States v. Berberena*, 694 F.3d 514, 518-19 (3d Cir. 2012). Prior to November 2011, § 1B1.10 permitted defendants who had originally received a below-Guidelines departure or variance to receive a comparable departure or variance in the context of sentence reductions under 18 U.S.C. § 3582(c)(2). *See*

---

[2] Congress passed the Fair Sentencing Act ("FSA") in 2010 to "restore fairness to Federal cocaine sentencing" by altering upward the threshold quantities of crack cocaine that would trigger various mandatory minimum sentences. Pub. L. 111-220, § 2, 124 Stat. 2372, 2372 (2010). The Commission was given authority under the FSA to amend the Guidelines to be consistent with its directives. *Id.* at § 8. The promulgation of Amendment 750 is one such exercise of that authority.

U.S.S.G. § 1B1.10(b)(2) (2010).  As amended, however, § 1B1.10 generally prohibits courts from reducing a "defendant's term of imprisonment under [§ 3582(c)(2)] to a term that is less than the minimum of the amended guideline range . . . ."  U.S.S.G § 1B1.10(b)(2)(A).  The sole exception to this rule applies to defendants who originally received a downward departure as a result of providing substantial assistance to the Government.  *See* U.S.S.G. § 1B1.10(b)(2)(B).[3]

Based on Amendment 750, Johnson argued that his offense level under § 2D1.1 should be reduced from 33 to 31, making his Guidelines range 188 to 235 months.  Johnson further asserted that the District Court should continue to apply the ten-percent downward variance based on his personal history that it had applied both when sentencing him initially and when reducing his sentence in 2009, thus making his second reduced sentence 169 months' imprisonment.

On February 10, 2012, the government filed a submission with the District Court indicating that it did not oppose a reduction in Johnson's sentence to 188 months, but noting that the amended version of § 1B1.10, effective November 1, 2011, did not authorize the District Court to reduce Johnson's sentence based on a downward variance to anything less than 188 months' imprisonment.

---

[3] The prior version of § 1B1.10 specifically provided that, if the defendant originally received a below-Guidelines departure or variance, a comparable departure "may be appropriate" when granting a sentence reduction under § 3582(c)(2), while a comparable variance "generally would not be appropriate."  *See* U.S.S.G. § 1B1.10(b)(2)(B) (2010).  According to the Commission, however, such a distinction between departures and variances was "difficult to apply" and "prompted litigation."  *See* Notice of Final Action Regarding Amendment to Policy Statement 1B1.10, 76 Fed. Reg. 41332, 41334 (July 13, 2011).  By imposing a "single limitation applicable to both departures and variances," the 2011 amendment to § 1B1.10 was designed to "avoid unwarranted sentencing disparities" and "undue complexity and litigation."  *Id.*

On February 23, 2012, the District Court granted Johnson's motion insofar as it granted him a within-Guidelines reduction. It reduced Johnson's sentence to 188 months but denied his request to apply the ten percent downward variance it had twice previously applied. The court determined that § 1B1.10(b)(2)(A) only permitted it to further reduce Johnson's sentence where a downward departure had been granted in the original sentence based on the defendant's substantial assistance to the government, pursuant to Guidelines § 5K1.1. Because Johnson had not originally been granted such a departure, the District Court reasoned that "the limitation in § 1B1.10(b)(2)(A) now applie[d]" to him. JA-139. The District Court noted also that the Second Circuit had determined that § 1B1.10 was binding on district courts. *See Dillon v. United States*, 130 S. Ct. 2683 (2010); *United States v. Savoy*, 567 F.3d 71, 73-74 (2d Cir. 2009). The District Court thus concluded it was "not authorized to sentence Johnson below the amended guideline range of 188 to 235 months." JA-139.

This timely appeal followed.

## DISCUSSION

On appeal, Johnson makes three arguments as to why the District Court erred in determining that it could not apply a downward variance so as to reduce his sentence under Amendment 750 based on his personal history and characteristics, each of which attacks the validity of § 1B1.10. First, he argues that the Commission's 2011 amendment to § 1B1.10 both exceeds the Commission's authority and goes beyond the directives of the Sentencing Reform Act ("SRA"), 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.*, and thus cannot bind the District Court. He bases this argument on the assertion that because § 1B1.10 permits certain retroactive sentence reductions while also limiting the court's ability to apply most departures or

variances, it interferes with the "structure of the sentence." Appellant's Br. at 15. Second, Johnson argues that the Commission's amendment of Guidelines § 1B1.10 violates separation-of-powers principles, and therefore is invalid. Finally, Johnson asserts that the Commission failed to follow the procedural requirements for promulgating formal rules set forth by the APA when it amended § 1B1.10 of the Guidelines, rendering that policy statement invalid.

Several of our sister Circuits have already addressed many or all of the issues that Johnson now raises.[4] *See, e.g., Berberena*, 694 F.3d 514; *United States v. Anderson*, 686 F.3d 585, 589-90 (8th Cir. 2012); *see also United States v. Horn*, 679 F.3d 397, 401-02 (6th Cir. 2012) (addressing similar arguments as to Guidelines Amendment 709); *United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011) (addressing similar arguments as to the prior version of § 1B1.10). For reasons substantively akin to those set forth by these Circuits, we hold today that § 1B1.10 of the Guidelines is valid and binding on district courts.

We address each of Johnson's arguments in turn.

**I.  Standard of Review**

We generally review a district court's "[c]onclusions of law, including those involving constitutional questions, . . . *de novo*." *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 135 (2d Cir. 2008) (quoting *United States v. Fell*, 531 F.3d 197, 209 (2d Cir. 2008)). Sentencing issues not raised before the District Court due to oversight are normally

---

[4]  Indeed, a different panel of this Court has recently held that a District Court may not apply a downward departure from a defendant's reduced Guidelines range when conducting a sentencing reduction pursuant to Amendment 750 and the 2011 amended version of U.S.S.G. § 1B1.10. *See United States v. Steele*, 12-1072-CR, 2013 WL 1908223 (2d Cir. May 9, 2013) (per curiam).

reviewed for plain error. *See United States v. Keppler*, 2 F.3d 21, 24 (2d Cir. 1993).

The parties disagree as to which standard of review applies in this case. Johnson asserts that because he raised the general issue of the application of § 1B1.10(b)(2) during the second sentence reduction proceedings, a "harmless error" standard should apply. *See United States v. Villafuerte*, 502 F.3d 204, 207 (2d Cir. 2007) (finding plain error standard applicable only where a defendant failed entirely to raise an issue below). The Government argues that plain error review is the applicable standard, since Johnson's argument that § 1B1.10 is invalid or non-binding was not presented to the District Court, and thus has been raised for the first time on appeal.

We decline to decide which standard of review applies in this case, as we ultimately conclude that, even under *de novo* review, Johnson's arguments do not undermine the validity or binding nature of § 1B1.10, and thus the District Court properly determined that § 1B1.10 prevented it from further reducing Johnson's sentence.

**II. Commission's Authority**

Johnson first argues that the 2011 amendment to §1B1.10 of the Guidelines exceeds the authority of the Commission and contradicts the purpose of the SRA, and thus is not binding on the District Court. He asserts that the District Court therefore erred in holding that it did not have the authority to apply a downward variance so as to impose a sentence below the amended Guidelines range.

While a district court generally may not reduce a term of imprisonment once it is imposed, *see Cortorreal v. United States*, 486 F.3d 742, 744 (2d Cir. 2007), Congress has authorized retroactive reductions in limited circumstances, as set forth in 18 U.S.C. § 3582(c)(2).

8

The SRA, in turn, allows the Commission to determine the extent to which Guidelines amendments addressing disparities in crack-cocaine sentences, such as Amendment 750, may apply retroactively. *See* 28 U.S.C. § 994(u).

The Supreme Court has held that a sentence reduction under 18 U.S.C. § 3582(c)(2) does "not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt," and thus provisions in the Guidelines pursuant to which a defendant may seek a reduction under 18 U.S.C. § 3582(c)(2) may bind a district court. *Dillon*, 130 S. Ct. at 2692-93. Thus, the types of sentence reductions provided for in amendments such as Amendment 750 are not considered full-fledged "resentencings," such that the Sixth Amendment concerns identified in *Booker* do not apply. *See id.* In *United States v. Savoy*, we specifically held that, if a defendant was originally sentenced within the applicable Guidelines range, *Booker* and its progeny do not permit district courts to disregard § 1B1.10(b)(2)(A) by reducing the defendant's sentence below the amended Guidelines range.[5] 567 F.3d at 73-74. Such amendments therefore are considered valid and binding on district courts. *See id.*

Section 1B1.10 was enacted and amended pursuant to the power granted to the Commission in 28 U.S.C. § 994(a) and (u). *See* Notice of Final Action Regarding Amendment to Policy Statement 1B1.10, 76 Fed. Reg. at 41332. Thus, Congress has delegated to the Commission the power it exercised both in creating and amending § 1B1.10. *See Berberena*, 694 F.3d at 520-22. Amendment 750 establishes that certain defendants convicted of offenses involving crack cocaine are entitled to retroactive reductions in their offense levels as set forth in

---

[5] As noted above, this is the Amendment pursuant to which Johnson's sentence was reduced by the District Court in 2009.

9

§ 2D1.1, and thus a reduction in their applicable sentence ranges.   However, these reductions are not without parameters.   The 2011 version of § 1B1.10 provides that under Amendment 750, a sentence generally may not be reduced to a "term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection."   U.S.S.G. § 1B1.10(b)(2)(A).

Johnson argues that § 1B1.10 exceeds the Commission's authority under the SRA by generally prohibiting district courts from re-imposing departures or variances imposed at a defendant's original sentencing hearing.[6]   This argument is without merit.

The Commission is authorized to permit a retroactive reduction in a defendant's sentence under 18 U.S.C. § 3582(c)(2), which provides that "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the . . . Commission pursuant to 28 U.S.C. § 994(*o*), upon motion of the defendant . . . the court may reduce the term of imprisonment . . . ."   When the Commission chooses to retroactively reduce the applicable guideline range for a sentence, Congress has directed that "it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."   28 U.S.C. § 994(u).   In issuing such retroactive reductions, the Commission is directed to do so via binding policy statement, as it has done in § 1B1.10.   *See* 28 U.S.C. § 994(a)(2).[7]

---

[6] The 2011 version of § 1B1.10 differs (for present purposes) from the preceding version of § 1B1.10 only insofar as it does not permit a district court to apply a previous variance or departure to sentence outside the reduced Guidelines range unless the defendant previously received a downward departure based on substantial assistance to the Government.

[7] 28 U.S.C. § 994(a)(2) provides that "[t]he Commission . . . pursuant to its rules and regulations and consistent with all pertinent provisions of any Federal statute shall promulgate . . . . general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission

10

Accordingly, the Commission has followed the directives of 28 U.S.C. § 994(u), and thus acted permissibly.[8]   Congress has given it the authority to retroactively reduce applicable guidelines ranges for sentences such as Johnson's sentence here.   28 U.S.C. § 994(*o*); *see also Dillon*, 130 S. Ct. at 2693.   It must do so by establishing "in what circumstances and by what amount" a retroactive guideline range reduction would be appropriate, and then issue such retroactive reductions via binding policy statements.   28 U.S.C. §§ 994(a)(2), (u).   In amending § 1B1.10 to allow for retroactive sentence reductions pursuant to Amendment 750, while prohibiting further reductions based on certain earlier-applicable variances or departures, the Commission has done precisely that which it was permitted, and congressionally encouraged, to do.   Johnson's arguments to the contrary are unavailing.

**III.   Separation of Powers**

Johnson next argues that the Commission's 2011 amendment to § 1B1.10 of the Guidelines is invalid because it violates constitutional separation-of-powers principles. Johnson advances two arguments in this regard: (1) the Commission's ability to issue binding policy statements constitutes the exercise of legislative authority without the requisite accountability to Congress; and (2) the binding nature of § 1B1.10 infringes upon the exercise of judicial authority of courts conducting sentencings.

---

would further the purposes set forth in section 3553(a)(2) of title 18, United States Code, including the appropriate use of . . . the sentence modification provision[ ] set forth in section[ ] . . . 3582(c) of title 18."   The directive to promulgate a policy statement in this and other delineated instances is contrasted with certain acts as to which the Commission is directed to promulgate "guidelines, . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case."   28 U.S.C. § 994(a)(1).

[8]   The Sixth Circuit has succinctly summarized the authority permitting the Commission to issue binding policy statements in this context as follows:   "§ 994(u) requires the Commission to specify [by what amount sentences may be reduced based on retroactive amendments], § 994(a)(2)(C) requires that this specification be in the form of a policy statement, and § 3582(c)(2) makes those policy statements binding."   *Horn*, 679 F.3d at 401-02.

**A. Legislative Authority**

Johnson argues that Congress failed to set forth an intelligible principle to guide the Commission's issuance of binding policy statements regarding retroactive sentence reductions, and thus such policy statements violate separation-of-powers principles.

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States. . . ." U.S. Const., Art. I, § 1. To preserve the "integrity and maintenance of the system of government ordained by the Constitution," the non-delegation doctrine establishes that "Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 371-72, (1989) (quoting *Field v. Clark*, 143 U.S. 649, 692 (1892)). However, Congress may delegate its legislative power so long as it provides "by legislative act an *intelligible principle* to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Id.* at 372 (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928)) (emphasis added, alteration in original). The Supreme Court has recognized that such intelligible principles may be broad in scope, as "in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Id.*.

Johnson asserts that separation-of-powers concerns are implicated by the Commission's 2011 amendment of § 1B1.10 because nothing "restrain[s] the . . . Commission if it chooses to issue so-called binding policy statements as part of the decision to make an amendment retroactive." Appellant's Br at 24. The argument that promulgation of the 2011 amendment to § 1B1.10 indicates the Commission has engaged in unbridled and constitutionally invalid

12

legislative authority by enacting that policy statement is ultimately unavailing.

The Supreme Court has held that the SRA "sets forth more than merely an 'intelligible principle' or minimal standards." *Mistretta*, 488 U.S. at 379. Because only an "intelligible principle" is required, "[t]he threshold for a constitutionally valid delegation is much lower than was the delegation in *Mistretta*." *Berberena*, 694 F.3d at 523 (citing *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011)). Every Circuit to have considered this non-delegation question has concluded that the SRA satisfies the threshold of setting forth an intelligible principle because it "limit[s] and inform[s] the Commission on how it must exercise its delegated authority." *Berberena*, 694 F.3d at 524 (internal quotation marks omitted); *accord Anderson*, 686 F.3d at 590; *Horn*, 679 F.3d at 404-05; *Garcia*, 655 F.3d at 434-35. We join these Circuits in holding that both 28 U.S.C. §§ 994(a)(2) and 994(u) sufficiently limit and inform the Commission on how it must exercise its delegated authority.

In § 994(u), Congress articulated the scope of the Commission's power to retroactively reduce sentences by empowering it to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for [an] offense may be reduced." 28 U.S.C. § 994(u). In § 994(a)(2) "Congress prescribed the specific tool – policy statements – for the Commission to use in regulating the retroactive effect of sentencing." *Horn*, 679 F.3d at 405. These policy statements must "further the purposes set forth in [18 U.S.C. § 3553(a)(2)]," 28 U.S.C. § 994(a)(2), such as the need for a sentence to "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2). Congress has thus sufficiently instructed the Commission as to both the contours of its authority to reduce a term of imprisonment recommended in the Guidelines and the means by which it

13

may do so.   We therefore agree with the Third Circuit that "these provisions are of the same type as those on which the *Mistretta* Court relied," *Berberena*, 694 F.3d at 524, and that Congress has "delineate[d] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority," *Mistretta,* 488 U.S. at 373.   Because Congress has provided an intelligible principle on which the Commission may rely, its promulgation of the 2011 version of § 1B1.10 does not violate separation-of-powers principles.

**B.  Judicial Authority**

Johnson next argues that the 2011 amended version of §1B1.10 unconstitutionally interferes with the powers of the judiciary by constraining a court's ability to counteract the possibility of an amended Guidelines range that is too high to grant a defendant a sentence "sufficient, but not greater than necessary" via a downward departure or variance.   18 U.S.C. § 3553(a).   This argument is fatally undercut by both *Mistretta* and *Dillon*.

The judiciary's discretion in sentencing is not absolute.   In *Mistretta,* the Supreme Court stated that "Congress . . . has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control."   488 U.S. at 364 (internal citations omitted).   The limitation imposed by the 2011 amended version of § 1B1.10 is just such an exercise of this congressional authority.   "[I]t is Congress that bound courts to the limitation in § 1B1.10, by expressly requiring that sentence reductions based on amendments to the Guidelines be consistent with the Commission's policy statements." *Berberena*, 694 F.3d at 525.   Therefore, though it is the Commission that crafts the policy statements, it is Congress that has made them both available as a general matter and binding on the courts that employ them.   *See id*.

14

Further, in *Dillon* the Supreme Court rejected characterizing proceedings under 18 U.S.C. § 3582(c)(2) for a sentence reduction as "resentencings." 130 S. Ct. at 2690. The Court noted that § 3582(c)(2) "provides for the 'modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission," and does not provide for "a plenary resentencing proceeding." *Id.* at 2690-91 (citing 28 U.S.C. § 994(a)(2)(C) (alterations in original)). The Court bolstered this determination by noting that the Commission maintained, in the first instance, the ability to determine the scope and content of available sentence reductions under § 3582(c)(2). *Id.* at 2691. Courts are therefore dependent on "the Commission's decision not just to amend the Guidelines but to make the amendment retroactive" and "constrained by the Commission's statements dictating 'by what amount' the sentence of a prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'" *Id.*

The Court's holding in *Dillon* that motions under 18 U.S.C. § 3582(c)(2) do not lead to full-fledged resentencings, but rather are merely sentence reductions, reinforces our holding today that the Commission has not violated constitutional separation-of-powers principles by amending § 1B1.10 as it did in 2011. As the Third Circuit has noted, the Court's decision in *Mistretta* came at a time, pre-*Booker*, "when the Commission's ability to limit courts' sentencing discretion was at its zenith." *Berberena*, 694 F.3d at 526 (citing *Mistretta*, 488 U.S. at 367). Thus, Johnson's claim that the Commission is wrongly exercising judicial power and thereby violating the separation-of-powers doctrine holds little sway today. "The Commission no more interferes with the sentencing decisions of courts by limiting the extent to which sentences may be reduced than when it established mandatory sentencing ranges under the pre-*Booker* regime."

*Id.*   Accordingly, we reject Johnson's argument that the Commission violated separation-of-powers principles by wrongfully limiting judicial powers in promulgating the 2011 amendment to § 1B1.10 of the Guidelines.

**IV.  Policy Statement Adoption Procedures**

Finally, Johnson argues that the 2011 amended version of § 1B1.10 was enacted without the proper notice-and-comment procedures mandated by the APA.   As Johnson acknowledges, policy statements such as § 1B1.10 are subject to neither the APA's 180-day waiting period nor the notice-and-comment requirements for formally promulgated rules.   *See* 28 U.S.C. §§ 994(a), (p); *Berberena*, 694 F.3d at 526-27 (stating that a notice-and-comment argument regarding amended § 1B1.10 "is based on a faulty premise" for precisely this reason). Nonetheless, Johnson asserts that these policy statements violate the separation-of-powers doctrine because they allow the Commission to bind the courts without sufficient oversight from Congress, and because the notice-and-comment period allowed in this instance by the Commission was not meaningful.

The absence of both the notice-and-comment and waiting period safeguards set forth in the APA did not deprive Congress of its ability to check the Commission's exercise of legislative power through policy statements.   "Although policy statements are not subject to the 180-day waiting period applicable when the Commission passes a Guidelines Amendment, Congress can direct the Commission to change its retroactivity determination or pass a law overruling the Commission's determination 'at any time.'"   *Berberena*, 649 F.3d at 524 (quoting *Mistretta*, 488 U.S. at 394).   The Commission's own rules state that it must "endeavor[] to include amendments to policy statements and commentary in any submission of guideline amendments

16

to Congress." *Berberena*, 694 F.3d at 524 n. 13 (citing U.S. Sentencing Comm'n, R. of Practice and Proc. 4.1.). Therefore, Congress had both notice of the proposed limitation on sentence reductions and ample opportunity to dictate an alternative amendment to § 1B1.10, if it so chose.

Furthermore, the 2011 amended version of § 1B1.10 was enacted after the Commission held a public hearing about the amendment's limitations on retroactive sentence reductions. Although the amendment challenged in this case was not subjected to either the 180 day waiting period or the APA's notice-and-comment requirements, the purpose of those measures – to keep the Commission accountable – was fulfilled. As such, we do not agree with Johnson that the Commission's failure to follow procedures prescribed under the APA for the enactment of regulations, neither of which was required to amend a policy statement such as § 1B1.10, can render that subsection invalid.

**CONCLUSION**

For the aforementioned reasons, the District Court did not err in granting Johnson a within-Guidelines sentence reduction under 18 U.S.C. § 3582(c)(2) pursuant to Amendment 750 of the Guidelines, while denying Johnson's application for a below-Guidelines variance based on his personal history. The Order of the District Court is therefore **AFFIRMED**.